**Bernard Lyon FRISHMAN, Appellant,**

v.

**CANADIAN IMPERIAL BANK OF COM-**
**MERCE, a Corporation, Appellee.**

**CANADIAN IMPERIAL BANK OF COM-**
**MERCE, a Corporation, Appellant,**

v.

**Bernard Lyon FRISHMAN, Appellee.**

**Nos. 21325, 21332.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 13, 1968.

Decided May 9, 1968.

William L. Kaplan, Washington, D. C., with whom Karl G. Feissner, Washington, D. C., was on the brief, for appellant in No. 21325 and appellee in No. 21332.

Benjamin W. Dulany, Washington, D. C., for appellee in No. 21325 and appellant in No. 21332.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

PRETTYMAN, Senior Circuit Judge:

These cases are cross-appeals from the same judgment and were consolidated here for argument and disposition. In the early part of 1963 the Abel Construction Co., Ltd., negotiated a loan in the amount of $185,000 from the Canadian Imperial Bank of Commerce. As security for the loan the Bank demanded assignment of the Company's accounts receivable and the personal guarantees of its four shareholders. On March 20, 1963, the parties met to consummate the transaction. The Company signed a demand promissory note and made an assignment of its receivables, but it delivered only three of the four required guarantees. The Bank credited the Company's account with the face amount of the loan. Thereafter, on March 25, 1963, the guarantee of the fourth stockholder, Mr. Bernard Frishman (party to the present litigation), was signed and delivered to the Bank. In June the Bank, pursuant to its custom when guarantees are not executed before an officer of the Bank, wrote Mr. Frishman requesting him to place his signature on a copy of the guarantee to assure that he had indeed signed the original personally and understood its import. Mr. Frishman replied that he guaranteed only ten per cent of the loan and that amount for a period of only one year. The Bank responded with a rejection of these conditions, and Mr. Frishman then authenticated a copy of the guarantee.

The guarantee was not limited to the amount of the original loan but included all future indebtedness to the Bank incurred by the Company. Subsequently the Company experienced financial difficulty and made an "overdraft" at the Bank to meet its payroll, which the Bank accepted in the amount of $12,432.59. In October, 1963, the Bank became concerned about its investment and called the note. The Company took bankruptcy. The Bank then made a demand on Mr. Frishman for $198,273.99 upon his guarantee, which figure represented the original loan of $185,000 with interest, plus the overdraft. Mr. Frishman declined payment, and the Bank sued him. Judgment was entered against him in the District Court in the sum of $12,042.00, plus interest on that amount from October 23, 1963, plus costs, and in his favor on the balance of the claim. That judgment is the matter now before us.

On the trial several defenses to the claim of the Bank were submitted by Mr. Frishman, but principally he said that his guarantee, having been executed after the loan had been made, was without consideration and therefore of no binding effect upon him. The Bank rejoined that the document had been executed under seal, which purported consideration, and that therefore no independent consideration was needed. On this point a question of fact arose as to whether the seal which appeared on the document when it was presented in court was placed there before, at the time of signing, or at a later time by someone other than Mr. Frishman. The trial judge, quite properly, submitted this

question to the jury, which answered in a special verdict to the latter effect.

The Bank says its forbearance to call the note of the Company, it being a demand note, constituted a valid consideration for the guarantee bond. Therefore, it says, the question of the seal is really immaterial and the guarantee should be enforced as a simple contract.

■ There is a doctrine, dating from at least a hundred years back in the common law,[1] that a forbearance asked and given may constitute a consideration for a guarantee. But, so far as we can ascertain, such a forbearance has always been actual; the transaction of guarantee has been treated as a contract, a forbearance of value given for a guarantee of value. The subject is discussed at some length in the Canadian case [2] cited by the appellant Bank in the case now before us.

This concept of the transaction before us would be that Frishman guaranteed the loan in consideration of the forbearance of the Bank in not calling it. This would be a valid contract. As such it would be binding both ways, binding on Frishman and binding on the Bank. The argument encounters several difficulties.

The first difficulty is that the record contains no evidence of such an agreement. No witness said the Bank agreed to forbear or intended to forbear. We are shown no evidence of an undertaking on the part of the Bank that it forbear from calling the loan. On the other hand the guarantee bond specifically recited that the Bank might grant extensions and otherwise deal with the borrower "as the Bank may see fit". The circumstances of the execution of the guarantee were described by witnesses for both plaintiff and defendant. No mention of forbearance as a factor was made. The guarantee was described by all as intended to be part of the formalities of the making of the loan. The plan went awry in its schedule.

The manager of the Bank testified that, to the best of his knowledge, there was no correspondence or verbal discussion between the Bank and Mr. Frishman during the period March 20th (the date the loan was made) and March 25th (the date of the execution of the guarantee bond). It seems to us that, if a contract of such size and importance were being negotiated, some communication between the parties would have occurred.

In sum, there simply is no evidence in this record that the Bank demanded the guarantee in consideration of its forbearance from calling the loan, or that the parties agreed upon a forbearance.

It is said that forbearance can be presumed. But we think it cannot be presumed from mere failure to call. Ordinarily the reason a lender does not call is that he is satisfied with the state of the loan. The normal course is not to call a demand note in the absence of some circumstance which disturbs the contemplated state of affairs, or until the loan has run unduly long. The term "forbear" means not to do something one would otherwise do. So the term does not apply to a more abstention from call. It applies when some circumstance makes a call appear to be the probable or intended course. This element of the meaning of the term is what makes a "forbearance" available as a consideration in a contract.

■ In the case at bar the failure of the Bank to receive the fourth guarantee could well have been a circumstance which justified the Bank in calling the loan. Although the call of a loan of $185,000 five days after it was made would appear to be a somewhat unusual business transaction, we think the circumstances here would have given a forbearance enough substance to constitute it a consideration for a contract of guarantee. The Bank could have said, "If we do not get this fourth guarantee we will simply call the loan." Such a determination would make a contrary forbearance a fact of real substance which could constitute a consideration for a bond. But

1. Alliance Bank Ltd. v. Broom, 62 E.R. 631 (L.J.Ch.1864).

2. Royal Bank of Canada v. Kiska, [1967] 2 Ont. 379 (C.A.1967).

the forbearance must be a fact; the course from which the Bank forbore or agreed to forbear must be a fact. But this record contains no evidence of such action or attitude. We cannot presume it.

The Bank might have been satisfied with the stability of the Abel Company to such an extent that it would have decided to go along with the three guarantees and the other security it had. It made the loan and advanced the money upon the security of the three guarantees and the assignment of receivables. No adverse factors had developed. All the evidence is to the effect that at that point the Bank was not disturbed by any feature of Abel's financial affairs. In that state of the record we cannot presume that the Bank would have called the loan if the fourth guarantee had not been forthcoming. There must be, we think, some evidence of an intent to call, absent a guarantee. If such intent were established by evidence in the record, we might presume that the bond was given in consideration of forbearance from execution of that intent; but we cannot presume the intent without evidence of it.

The second difficulty with the argument is that we are not offered adequate explanation of several features of the contract urged upon us which might militate against the probability of its execution by the Bank. The loan agreement gave the Bank an unfettered right to call the loan at its own discretion. That would appear to be a valuable right. If the Bank thereafter contracted with Frishman, for a valuable consideration, to forbear from calling, it contracted away that right. What right of demand would remain after the bond agreement does not appear. Again, the Bank did not sign the alleged contract. So the argument is that the Bank bound itself by an agreement it did not sign. Still again, the bond was a variation of a written agreement. In this respect also, the fact that the Bank did not sign it is a material

consideration. Further, a question would arise whether the Bank violated its contracted obligation when it peremptorily called the note at the first sign of trouble in the Company. It does not appear what evidence of the agreement to forbear appears in the Bank's records, or whether those records simply do not reflect accurately the whole of this loan transaction as it was after the bond contract.

All these considerations tend to impel us to decline to presume a contract here, when no evidence of its terms or of an intent to execute it appear in the record.

It is perfectly clear that the Bank could have required Mr. Frishman's guarantee to be in hand when it actually made the loan, and the guarantee would have been solid support for the loan, and the loan for the guarantee. But, when the Bank made the loan without the guarantee and then later sought and secured the bond, it put itself under the rules governing the obligations of parties when a third party undertakes to guarantee an existing loan.

The case to which the Bank refers,[3] and upon which it principally relies on this point, does not support its position. Indeed it explains with clarity the law as we see it and have applied it here. In that case a borrower, encountering financial trouble, successfully importuned his brother to guarantee an existing loan at the bank in order to persuade the bank to refrain from a threatened calling of the loan. The forbearance procured by the bond was real. The controversy concerned other features of the transaction.

We think that under the facts shown in this record we cannot hold the guarantee bond to have been supported by a forbearance which would be depicted entirely by presumptions of fact and law devised by us. We understand there is a school of legal scholars who would abolish the doctrine of consideration. But as of now that doctrine is a firm fixture in our law of contracts, and despite our

---

3. Royal Bank of Canada v. Kiska, *supra* note 2.

common law powers we decline to venture upon so ambitious a project as its elimination would be, at least as presently advised.

As to the overdraft, the trial court ruled that, since the guarantee was signed before the overdraft was made, the action of the Bank in honoring the request for that sum was in itself consideration for the guarantee in that amount. Hence it entered judgment of liability for the amount of the overdraft but found no liability for the amount of the original loan. We find no error in that judgment.

The Bank collected $6,293.72 from the accounts receivable assigned to it as security. The trial court at first credited that collection against the payment made by the Bank on the overdraft, but later reconsidered and credited it against the original loan. We agree with its disposition of the item.

Affirmed.