[No. 39649.    Department Two.    July 10, 1969.]

NORTHERN STATE CONSTRUCTION COMPANY, *Appellant,* v.
BERNARD ROBBINS *et al., Respondents.**

*Reported in 457 P.2d 187.

358

*Allen, DeGarmo & Leedy* and *Seth W. Morrison,* for appellant.

*Devin, Hutchinson & Peterson, Jordan, Adair & Kasperson, Miracle & Pruzan, Short, Cressman & Cable, William L. Hintze,* and *Robert E. Heaton,* for respondents.

NEILL, J.—This is an action upon an agreement signed by defendants personally guaranteeing payments due plaintiff from Diners, Inc., under a construction contract. Plaintiff appeals from a judgment of dismissal and the trial court's ruling that the guaranty was not supported by consideration.

This action grew out of the failure of a venture intended to capitalize on the Seattle World's Fair. Defendants, acting through a previously dormant corporate structure known as Diners, Inc., planned to build a concession building on property owned by two other corporations controlled by defendant Dave Beck, Sr. An architect, Arnold Wisbeck, was employed to draw plans for the building. Mr. Wisbeck also prepared a standard American Institute of Architects form construction contract dated February 27, 1962. This contract was signed by David A. Brazier, president of plaintiff Northern State Construction Company, and by defendant Bernard Robbins for Diners, Inc. The individual defendants also signed a document dated March 1, 1962, personally guaranteeing Diners' performance under the construction contract. In a second guaranty dated March 28, 1962, defendants personally guaranteed payments due

National Bank of Commerce on a loan to the plaintiff construction company.

The venture failed after the building was completed. Diners, Inc., was apparently insolvent; so plaintiff brought this action upon the first (March 1, 1962) guaranty for $78,500, being the unpaid balance under the construction contract.

Once we get beyond these general points, the facts are widely disputed. The testimony of Mr. Brazier, president of plaintiff, two officials of the National Bank of Commerce, and Mr. Wisbeck, the architect, although not exactly clear on some points, indicate that a bank loan was needed to finance this transaction; that, while the bank was not willing to loan to Diners, Inc., it would make a loan to plaintiff, a previous customer; that in at least one meeting prior to February 27, 1962 (the date on the face of the construction contract) defendants and Mr. Brazier were told by bank officials that a guaranty of payments under the construction contract to plaintiff would be required of defendants; that Mr. Brazier was advised by Mr. Shumaker, manager of the Battery Street Branch of the National Bank of Commerce, not to proceed without a personal guaranty from defendants; and that Mr. Brazier would not have executed the construction contract without this guaranty.

Testimony of the defendants is in conflict with much of the testimony of plaintiff's witnesses. Defendants testified that Mr. Robbins signed the construction contract on February 27, 1962, and at that time Mr. Brazier had already signed it for plaintiff; that they signed the guaranty to plaintiff on March 1, 1962, as part of a large group of papers without reading it; that their first meeting with the bank was later in the day of March 1, 1962, at which time the bank asked for a guaranty of its loan to plaintiff; that a guaranty to the bank was executed by defendants on March 28, 1962; that neither at the March 1st meeting nor at any time previous was there any mention of a guaranty to plaintiff of performance under the construction contract. There was also evidence that the guaranty to plaintiff was prepared by an attorney representing Mr. Beck for Mr.

Beck's own purposes, presumably to be used in exchange for a release of the contractor's lien rights upon the realty upon which the building was to be constructed—which property was owned by Mr. Beck's corporations. These liens were never released by plaintiff.

The trial court entered findings of fact which substantially agree with defendants' version of the events. The court's conclusions of law held that the construction contract created a binding obligation between plaintiffs and Diners, Inc., but that the guaranty agreement of March 1, 1962, was devoid of consideration. Therefore, plaintiff's action against the defendants, individually, was dismissed.

Plaintiff sets forth 26 assignments of error.

■ Nine of the assignments of error challenge findings of fact entered by the trial court. We might well agree with plaintiff's version of the facts if we were trying this case de novo upon the record. However, the Supreme Court, on appeal, is not permitted to weigh the evidence. Findings of fact entered by the trial court which are supported by substantial evidence will not be disturbed on appeal. *Industrial Electric-Seattle, Inc. v. Bosko*, 67 Wn.2d 783, 410 P.2d 10 (1966). We have carefully reviewed the record and find substantial evidence in support of each of the challenged findings of fact; therefore, there is no merit to these assignments of error.

Plaintiff also argues that it is not necessary that the guaranty agreement be executed prior to or simultaneously with the construction contract if the construction contract was conditionally executed and delivered, or if the two documents were intended as part of a single transaction. While we do not disagree with plaintiff's argument as an abstract principle, we cannot find a conditional delivery or a single transaction under the trial court's findings of fact. The court found that at no time prior to February 27, 1962, when the construction contract was executed, did plaintiff or any of its officers, or the bank or any of its officers indicate to defendants that they "were requesting, demanding, expecting, bargaining for or relying upon a guaranty of the obligation of Diners, Inc. to plaintiff". (Finding of fact

No. 9.) Without some indication to defendants prior to the execution of the construction contract that a guaranty was expected, we cannot imply a promise to supply that guaranty.

Plaintiff also contends that the bank's loan to plaintiff which was made after the guaranty was executed and in reliance thereon furnished consideration for the guaranty. Aside from the fact that the bank's loan was to plaintiff and conferred only tangential benefit to the defendant guarantors, plaintiff's argument still overlooks the trial court's finding that there was no discussion at all between the bank and defendants concerning a personal guaranty of Diners, Inc.'s obligations to plaintiff. The consideration supporting a guaranty agreement, as with other contracts, must arise out of an agreement between the parties. *Universal C.I.T. Credit Corp. v. DeLisle*, 47 Wn.2d 318, 287 P.2d 302 (1955); *Cowles Pub. Co. v. McMann*, 25 Wn.2d 736, 172 P.2d 235, 167 A.L.R. 1164 (1946). That which would be called consideration must have been furnished as a result of the bargain between the parties. Here there was no such agreement.

Further, the court found that plaintiff on March 1, 1962, was "completely unaware of there being any guarantee agreement either discussed or in existence." (Finding of fact No. 5.) Therefore, there could be no reliance upon the guaranty. A promise by the guarantor and reliance upon that promise are required before a guaranty executed subsequent to a contract can be founded upon consideration of the prior execution of the contract. *Universal C.I.T. Credit Corp. v. DeLisle, supra.* Since neither of these elements are present, the execution of the construction contract cannot be consideration for the later execution of the March 1st guaranty.

Plaintiff also relies upon the doctrine of promissory estoppel to supply consideration for the guaranty agreement. The requisites of promissory estoppel are: (1) a promise, (2) which the promisor should reasonably expect will cause the promisee to change his position, (3) which does cause a substantial change of position, action or for-

bearance by the promisee, (4) acting in justifiable reliance on the promise, and (5) injustice which can only be avoided by enforcing the promise. *Central Heat, Inc. v. Daily Olympian, Inc.,* 74 Wn.2d 126, 443 P.2d 544 (1968). The trial court found that no promise was made to plaintiffs to guarantee the amounts due them under the construction contract prior to the execution of the guaranty on March 1, 1962. Without this promise, there can be no justifiable reliance by plaintiff. *See Hilton v. Alexander & Baldwin, Inc.,* 66 Wn.2d 30, 400 P.2d 772 (1965). Plaintiff did not substantially change its position or exercise forbearance following the execution of the guaranty. All that plaintiff did was continue with the construction which it was bound to do by the terms of the contract. Estoppel cannot be based upon a promise which only induces the promisee to do that which he is already legally bound to do. *Western Land Ass'n v. Banks,* 80 Minn. 317, 83 N.W. 192 (1900). *See* 28 Am. Jur. 2d *Estoppel and Waiver* § 77, p. 714 (1966); and 31 C.J.S. *Estoppel* § 72, p. 444 (1964).

■ Plaintiff asserts that every contract is subject to an implied condition that a party will be able to perform its promises, and where the promise is to pay money the insolvency or potential insolvency of the promissor constitutes an anticipatory breach of the contract. It is evidently argued that Diners, Inc., was at least potentially insolvent at the time the construction contract was executed and that plaintiff was therefore under no obligation to perform. Thus, it is contended the subsequent performance of the contract constitutes consideration for the guaranty. We need not consider the general legal principle argued by plaintiff because the record fails to establish that Diners, Inc., was actually or potentially insolvent at the time the guaranty agreement was executed. A corporation is insolvent when it is unable to meet its obligations in the ordinary course of business. *Warren v. Porter Constr. Co.,* 29 Wn.2d 785, 189 P.2d 255 (1948). The record indicates that Diners, Inc., had substantial cash on hand at the time the guaranty was executed. The payments under the construction contract were spaced so as to allow their payment out

of the expected income from the concession building. There was no reason to expect that Diners, Inc., would be unable to meet its current obligations. Therefore, we cannot say that the corporation was actually or potentially insolvent at the time the guaranty agreement was executed.

The construction contract contained the following provision: "The work to be performed under this Contract shall be commenced *upon receipt of notice to proceed* and shall be substantially completed *April 21, 1962.*" (The italicized words were typed into blanks in the printed form.) Mr. Wisbeck, the architect who prepared the construction contract, testified that the notice to proceed provision was added because the builder did not then have firm financing, and that he could not instruct them to proceed until the financing was completed. Plaintiff contends that this clause rendered its obligation to perform under the contract conditional upon the notice to proceed, which is in turn conditional upon the securance of financing. Plaintiff implies that the financing was not provided until the guaranty was executed; and therefore the notice to proceed provision constitutes the heretofore missing link between the construction contract and the March 1st guaranty agreement. This argument is not supported by the record. The court found as a fact that, at the time of the execution of the construction contract, there had been no

> discussions or negotiations between the plaintiff or its officers or agents or the officers or agents of its bank, and the defendants or any one of them or the officers or agents of Diners, Inc., wherein the plaintiff or plaintiff's bank were requesting, demanding, expecting, bargaining for or relying upon a guaranty . . .

Finding of fact No. 9.

■ Such finding is amply supported by substantial evidence. The construction contract does not state that it is in any way conditioned upon one of the parties acquiring financing. The provision that work shall commence upon receipt of a notice to proceed does not make receipt of this notice an external condition precedent to the existence of

the contract. *See Ross Eng'r Co. v. United States,* 92 Ct. Cl. 253, 258 (1941).

█ A condition precedent, like any other contractual term, must arise by agreement of the parties. We cannot find such an agreement merely from the architect's testimony that he would condition his issuance of the notice to proceed upon a factor not stated in the contract. Even though the architect may be defendants' agent, he is not, without specific authorization, empowered to modify a contract entered into between his employer and a builder. *Schanen-Blair Co. Marble & Granite Works v. Sisters of Charity,* 77 Wash. 256, 137 P. 468 (1914).

A guaranty agreement, in order to be enforceable, must be supported by consideration. *Universal C.I.T. Credit Corp. v. DeLisle, supra.* A promise to carry out an already existing contractual duty of the promisee does not constitute consideration. *Queen City Constr. Co. v. Seattle,* 3 Wn.2d 6, 99 P.2d 407 (1940). Given the findings of fact made by the trial court which are supported by substantial evidence, plaintiff on appeal has been unable to show that performance under the construction contract was in any way conditioned upon or integrated with the guaranty agreement. Therefore, the trial court's determination that the guaranty was not supported by consideration must stand.

Plaintiff, however, has assigned error to a number of evidentiary rulings made by the trial court. These rulings, if error, would be prejudicial insofar as they affected the trial court's subsequent findings of fact. Therefore, we will review these assignments of error in some detail.

Plaintiff asserts that the parol evidence rule prohibits the introduction of evidence to contradict the consideration recited in the written guaranty agreement. That agreement states in part:

WHEREAS, third party [plaintiff] will not execute the said construction contract unless induced so to do in part by the execution and delivery of this instrument; and

WHEREAS, the undersigned first parties [defendants] and second party [Diners, Inc.] are desirous of executing

and delivering such instrument to provide such inducement;

Now, THEREFORE, for valuable consideration, receipt whereof is hereby acknowledged, IT IS MUTUALLY AGREED, as follows:

The trial court admitted evidence that no guaranty agreement was contemplated by the parties at the time the construction contract was executed, and that the guaranty agreement was prepared on behalf of Mr. Beck to be exchanged for a lien release which was never received.

■ A terse statement of the parol evidence rule is that extrinsic evidence cannot be admitted to vary an integrated written agreement. However, the rule is subject to definite exceptions and limitations which are as firmly established as the rule itself. *Buyken v. Ertner,* 33 Wn.2d 334, 205 P.2d 628 (1949). The evidence to which plaintiff objects was properly admitted under three of these exceptions or limitations.

First, the recitals prefaced by "whereas" may be treated as recitals of fact of the state of mind of the parties to the agreement. It is well accepted that extrinsic evidence is admissible to disprove a false recital of fact. *Cook v. Vennigerholz,* 44 Wn.2d 612, 269 P.2d 824 (1954).

Second, proof of the real consideration or lack of it may be admitted to vary the terms of a written agreement. *Crow v. Crow,* 66 Wn.2d 108, 401 P.2d 328 (1965). Plaintiff correctly states that extrinsic evidence may not be admitted to contradict consideration which constitutes a "contractual element" of the agreement. *See Kinne v. Lampson,* 58 Wn.2d 563, 364 P.2d 510 (1961). But the portions of the guaranty in question consist merely of recitals of the states of mind of the parties followed by a recital that consideration was received. These do not constitute a promise or condition which would amount to a contractual element of the agreement. *See Seattle-First Nat'l Bank v. Pearson,* 63 Wn.2d 890, 389 P.2d 665 (1964).

Finally, the court found as a fact that the guaranty agreement was entrusted to Mr. Wisbeck for the purpose of delivering it to plaintiff in exchange for its release of its

lien rights upon property owned by Mr. Beck's corporations. The guaranty agreement thus may have been conditionally delivered and subject to an external condition precedent. If such were the case, no contract existed until the external condition was fulfilled. Parol evidence is admissible to prove this type of conditional execution and delivery. *See Lempco Prods., Inc. v. Phillips,* 51 Wn.2d 334, 317 P.2d 1060 (1957); *Seattle-First Nat'l Bank v. Pearson, supra.*

Plaintiff has also made 10 assignments of error relating to other admissions and exclusions of various items of evidence. Most of these pertain to the exclusion of testimony by officials of the National Bank of Commerce on the advice they gave Mr. Brazier, president of plaintiff company, concerning the advisability of obtaining personal guaranties from defendants. This testimony was invariably objected to as hearsay and the objections were usually sustained. Plaintiff argues on appeal that the testimony was offered to show that Mr. Brazier was advised to secure a guaranty and to show his state of mind prior to executing the construction contract. The testimony was not, plaintiff argues, offered to show the truth of the advice given and was thus not hearsay. *See Palin v. General Constr. Co.,* 47 Wn.2d 246, 287 P.2d 325 (1955).

Plaintiff does not discuss these assignments of error in detail and some are not even argued in his brief. Some of the errors complained of are difficult to locate in the record. However, from our review of the record we are unable to find any instance in which plaintiff made an offer of proof in response to these objections setting forth the theory he now argues on appeal. In order to obtain appellate review of the trial court's exclusion of evidence, an offer of proof must be made which fairly advises the trial court whether the evidence is admissible. *Smith v. Seibly,* 72 Wn.2d 16, 431 P.2d 719 (1967); *Sutton v. Mathews,* 41 Wn.2d 64, 247 P.2d 556 (1952).

Plaintiff did make a tentative offer of proof in two instances—both referring to theories different from those argued on appeal. Neither of these particular instances is argued in the brief on appeal beyond merely assigning

error to them. While we do not normally consider assignments of error not supported by argument, we have reviewed the record and found no prejudicial error with respect to either exclusion. Mr. Brazier was allowed to testify as to the content of the advice given him by the bank officials. These bank officers were allowed to testify that they had advised Mr. Brazier. The content of that advice was excluded. The minutes of the bank loan committee were also admitted to show that bank officers were instructed to secure guaranties before making a loan to Mr. Brazier. Plaintiff was allowed to fully present his theory of the case to the court.

Plaintiff urges that the court should not have sustained objections to questions asked of an attorney representing Mr. Beck concerning the preparation of the guaranty agreement. The objections were based upon the attorney-client privilege. Plaintiff argues that the guaranty agreement was prepared for all the parties and that communications made to an attorney for the mutual benefit of several parties are not priviliged in litigation between these parties, citing *Billias v. Panageotou,* 193 Wash. 523, 76 P.2d 987 (1938). However, the trial court found that the attorney prepared the guaranty agreement at Mr. Beck's instance and for his purpose, which finding is supported by substantial evidence. Therefore, the attorney-client privilege applies to conversations between Mr. Beck and his attorney concerning the preparation of this agreement. We find no waiver of that privilege.

Plaintiff's final contention that Mr. Beck's deposition should not have been published is not supported by argument or authority in its brief and will therefore not be considered. *Seattle v. Schaffer,* 71 Wn.2d 600, 430 P.2d 183 (1967).

The judgment is affirmed.

HILL, FINLEY, and HAMILTON, JJ., and POYHONEN, J. Pro Tem., concur.

_____

September 25, 1969. Petition for rehearing denied.