**UNION NATIONAL BANK IN MINOT,**
Plaintiff and Appellant,

v.

**Fern SCHIMKE, Defendant and**
Appellee.

**Civil No. 8878.**

Supreme Court of North Dakota.

Aug. 13, 1973.

Palda, Anderson, Tossett, Palda, Thomas & Berning, Minot, for plaintiff and appellant.

Bosard, McCutcheon, Kerian, Schmidt & Holum, Minot, for defendant and appellee.

PAULSON, Judge.

Union National Bank in Minot [hereinafter Bank] is appealing a judgment of the District Court of Ward County that dismissed its action against Fern Schimke on a guaranty contract.

The pertinent facts are that Norbert Schimke, deceased husband of Fern Schimke, signed two promissory notes dated September 18, 1970, and March 10, 1971, in favor of the Bank. The complaint in the action prayed for judgment in the amount of $37,683.40, which was the amount due on the notes at the time of the preparation of the complaint.

On May 28, 1971, an officer of the Bank caused a guaranty contract to be prepared, and he gave this document to Norbert Schimke to be signed by his wife, Fern Schimke, and then to be returned to the Bank. This was done. The custom of the Schimkes was that Norbert Schimke handled business matters and Fern Schimke managed the household, so that when Norbert wanted Fern Schimke to sign any papers, she signed them without any discussion as to their identity, the provisions thereof, or their legal effect. Such was the case with the guaranty contract involved in this case.

No one associated with the Bank ever conversed with Fern Schimke about signing the guaranty contract or why the Bank desired a guaranty contract at all.

After Norbert Schimke's death on July 5, 1971, the Bank filed a creditor's claim against Norbert Schimke's estate. Such claim was not paid, as it appeared that the liabilities exceeded the assets in his estate. The Bank brought action against Fern Schimke on the basis of the guaranty on July 28, 1972.

The district court found that the Bank had not paid Fern Schimke the one dollar consideration recited in the guaranty contract and had not given or forborne anything of value as consideration for the execution of the guaranty contract. As a result the district court dismissed the Bank's action on the basis of lack of consideration.

The Bank alleges three specifications of error as grounds for its appeal:

1. That the trial court erred in dismissing the action on the basis of lack of consideration.

2. That the trial court erred in finding that the Bank did not change its position in reliance upon the guaranty.

3. That the trial court erred in not declaring Fern Schimke estopped from using the defense of lack of consideration.

The Bank also alleges that the evidence was insufficient to uphold the finding of the trial court that the Bank did not rely on the guaranty, because an officer of the Bank testified, which testimony was not refuted, that if Fern Schimke had not signed the guaranty contract the credit of her husband, Norbert Schimke, would have been called and declared due and owing under an acceleration clause in the promissory notes.

The first two specifications of error, as well as the alleged evidentiary insufficiency will be treated together, in determining the issue of whether the Bank's claim was properly dismissed for lack of consideration.

In 38 Am.Jur.2d, Guaranty § 37, page 1035, we find the following language:

"A writing which purports to be a contract of guaranty, but which has been signed without any previous request on the part of the alleged obligee and not in the latter's presence, for no consideration except future advances to be made to a third person, is in legal effect a mere offer or proposal which, lacking acceptance, does not bind the writer as guarantor."

That language is paraphrased from an opinion by the United States Supreme Court in Davis Sewing Machine Company v. Richards, 115 U.S. 524, 6 S.Ct. 173, 29 L.Ed. 480 (1885). In *Richards,* 115 U.S. at 527, 6 S.Ct. at 175, the United States Supreme Court summarized rules found in Davis v. Wells, 104 U.S. 159, 26 L.Ed. 686 (1881), when it said:

"But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract."

The rule set out by the United States Supreme Court in the previously cited cases is also codified in North Dakota. Section 22–01–06, N.D.C.C., provides:

"A mere offer to guaranty is not binding until notice of its acceptance is communicated by the guarantee to the guarantor. An absolute guaranty is binding upon the guarantor without a notice of acceptance."

This court has interpreted § 22–01–06, N.D.C.C., in accordance with the United States Supreme Court decision in Davis Sewing Machine Company v. Richards, *supra*; Rogers Lumber Co. v. Clark, 52 N.D. 607, 204 N.W. 184 (1925); Standard Sew-

ing Machine Co. v. Church, 11 N.D. 420, 92 N.W. 805 (1902).

Our decision in *Church* is applicable to the instant case. In *Church, supra,* 92 N. W. at 806, it was stated that the guaranty

" ' . . . was obtained by the J. N. Edmunds [principal debtor] therein named from the sureties, and by him afterwards delivered to the plaintiff [guarantee]; that neither the plaintiff nor any of its agents requested the defendants to sign the instrument, nor were they present when the same was signed and delivered to the said Edmunds; and neither of the sureties were present when it was delivered to the plaintiff; and that the sureties were never notified by the plaintiff of its acceptance and of the dependence of the plaintiff upon the undertaking.' "

The court held, in accordance with Davis Sewing Machine Company v. Richards, *supra,* that no binding guaranty contract had been formed.

■■■ The facts in the case at bar are quite similar to those in *Church.* The Bank did not request Fern Schimke to sign the guaranty; no one from the Bank was present when the guaranty was signed; Fern Schimke was not present when the guaranty instrument was delivered to the Bank; the Bank never communicated an acceptance of the guaranty offer to Fern Schimke. The end result of this purported guaranty contract is that the alleged guarantor never met with the guarantee so that an agreement could be consummated. Therefore, only an unaccepted offer of guaranty was made and Fern Schimke is not bound thereby.

In Frishman v. Canadian Imperial Bank of Commerce, 132 U.S.App.D.C. 169, 407 F.2d 299 (1968), the Bank sued Frishman on a guaranty he had signed after a loan had been made by the Bank to the corporation of which he was a shareholder. Frishman defended the suit on the grounds that there had been no consideration given

for his guaranty and he was thus not bound by it. There had been no negotiations between the Bank and Frishman and the bank had made no promise to forbear calling the loan in return for Frishman's guaranty. The Bank claimed its forbearance could be presumed as consideration due to its not calling the loan. The Court of Appeals did not agree with the bank when it said, in *Frishman, supra,* 407 F.2d at 301:

"It is said that forbearance can be presumed. But we think it cannot be presumed from mere failure to call."

■■■ Also, in Ireland v. Shukert, 238 Mo.App. 78, 177 S.W.2d 10, 15 (1944), it was said that:

"Our courts have repeatedly held that in order for forbearance by the creditor toward the principal to be a sufficient consideration, there must be an agreement on the part of the creditor that he will forbear. Mere forbearance or omission on the part of the creditor to exercise his legal rights without any agreement to that effect is not sufficient, because he may at any moment and at his own pleasure proceed. There must be promise for promise."

Based on these authorities it is quite evident that the Bank in the instant case gave no consideration in the form of forbearance. There was never any negotiation between the Bank and Fern Schimke wherein the Bank promised not to call the notes in return for the signing of the guaranty. The testimony of the Bank's officer that the Bank would have called the notes unless the guaranty was signed is obviously no forbearance at all unless it is a binding promise made to the guarantor, Fern Schimke, in return for the guaranty. As matters stood in this case, the Bank was in no different position after the guaranty was signed than it was in before the guaranty instrument was signed. The Bank could have called the notes at any time it deemed itself insecure, and, therefore, the

Bank made no promise to Fern Schimke in return for her signing the guaranty. As a result Fern Schimke is not bound by the guaranty she signed.

Section 22–01–03, N.D.C.C., provides:

"When a guaranty is entered into at the same time as the original obligation or at the same time as the acceptance of the original obligation by the guarantee and forms, with that obligation, a part of the consideration to the guarantee, no other consideration is necessary. In all other cases there must be a consideration distinct from that of the original obligation."

Not finding any relevant interpretations of § 22–01–03, N.D.C.C., by this court, we turn to another jurisdiction for a statement of the law which we believe is applicable.

In Universal C.I.T. Credit Corporation v. De Lisle, 47 Wash.2d 318, 287 P.2d 302 (1955), two shareholders of an automobile dealership signed a guaranty contract in favor of C.I.T. with whom the automobile dealership had a previous credit arrangement. The guaranty came later in time than the credit agreement, and C.I.T. made no new promises in return for the guaranty. When C.I.T. sued the guarantors, they claimed they were not bound because they received no consideration for their guaranty. The Washington Supreme Court agreed with the guarantors and explained the circumstances under which a pre-existing agreement could provide consideration for a subsequent guaranty contract, *Universal C.I.T., supra* 287 P.2d at 303–304:

"However, a guaranty contract executed after the creation of the principal obligation is supported by a consideration if it is predicated upon an antecedent promise with respect thereto, made as an inducement to the principal obligation, either directly by the undertaker or by the principal obligor in such a way as to bind him in a legal duty to the obligee."

The Washington Supreme Court found that there was no inducement in the form of a promised guaranty that encouraged the principal obligation and dismissed the action.

A more recent Washington case, referring to the *Universal C.I.T.* case, *supra*, namely, Northern State Construction Company v. Robbins, 76 Wash.2d 357, 457 P.2d 187, 190 (1969), used the following language:

"The consideration supporting a guaranty agreement, as with other contracts, must arise out of an agreement between the parties. . . .

"A promise by the guarantor and reliance upon that promise are required before a guaranty executed subsequent to a contract can be founded upon consideration of the prior execution of the contract."

The rule on consideration in guaranty contracts as found in 38 Am.Jur.2d, Guaranty § 44, page 1047, is:

"If the promise of the guarantor is shown to have been given as part of a transaction or arrangement which created the guaranteed debt or obligation, it is not essential to a recovery on the promise of guaranty that the promise shall have been supported by a consideration other than that of the principal debt—that is, one and the same consideration may suffice for both contracts where the contract of guaranty has been entered into at the time of creation of the principal obligation."

And in § 45, 38 Am.Jur.2d, Guaranty at 1047–1048:

"If the guaranty agreement was entered into, not as part of a transaction which included the creation of the original or principal debt or obligation, but independent thereof, the guarantor's promise must have been supported by a consideration which was distinct from that of the principal debt.

.    .    .    .    .    .

"Although the guaranty promise may have been made at a time subsequent to the creation of the principal obligation, the guaranty promise is founded upon a consideration if the promise was given as the result of previous arrangement, the principal obligation having been induced by or created on the faith of the guaranty."

Applying these rules to the instant case, it can be seen that there was no separate and distinct consideration given by the Bank to Fern Schimke in return for the guaranty. The guaranty contract in this case was executed subsequent to the incurring of the principal debt involved. There were no promises made by the Bank at the time the guaranty was signed by Fern Schimke. Also, the evidence discloses no reliance by the Bank on a promised guaranty at the time the principal obligation was incurred by Fern Schimke's husband. Therefore, there is no valid guaranty contract in existence in this case that binds Fern Schimke.

The next and final issue presented is whether Fern Schimke should have been estopped from using the defense of lack of consideration. The Bank asserts that since Fern Schimke signed the guaranty instrument, she should be estopped from claiming lack of consideration, since the Bank relied on the guaranty.

In Northern State Construction Company v. Robbins, *supra* 457 P.2d at 190, we find the elements of promissory estoppel set out:

"The requisites of promissory estoppel are: (1) a promise, (2) which the promissor should reasonably expect will cause the promisee to change his position, (3) which does cause a substantial change of position, action or forbearance by the promisee, (4) acting in justifiable reliance on the promise, and (5) injus-

tice which can only be avoided by enforcing the promise."

In 17 Am.Jur.2d, Contracts § 89, page 432, we find further explanation:

"But in order for the doctrine of promissory estoppel to apply, the promise which is sought to be enforced must have induced action of a definite and substantial character by the promisee. Also, justifiable reliance and irreparable detriment to the promisee are necessary factors to enable him to invoke the doctrine of promissory estoppel."

In addition, this court, in Abbey v. State, 202 N.W.2d 844 (N.D.1972), in paragraph 5 of the syllabus, held:

"It is essential that the party invoking the doctrine of estoppel should have been misled by the acts or conduct of the party against whom the estoppel is claimed, that he changed his position in reliance thereon, and was justified in so doing, and that he was prejudiced thereby, or that a benefit resulted to the party against whom the estoppel is claimed."

From the cited authorities we determine that promissory estoppel has no application in the case at bar. Fern Schimke may have made a promise when she signed the guaranty, but she did not know what the guaranty contract was nor the reason why the Bank wanted it. More importantly, the Bank did not change its position to its irreparable detriment. As previously discussed, the Bank lost none of its rights as a result of the guaranty contract and therefore suffered no detriment at all.

The judgment of the district court is, in all respects affirmed.

Affirmed.

ERICKSTAD, C. J., and TEIGEN, KNUDSON and VOGEL, JJ., concur.