**FIRST BANK OF NORTH DAKOTA
(N.A.) JAMESTOWN, Plaintiff
and Appellee,**

v.

**Reuben SCHERBENSKE and Iola
Scherbenske, Defendants and
Appellants,**

Sharon Scherbenske, Pamela Szarkowski,
Jerome R. Szarkowski, Mike Scherbenske, and Robert Scherbenske, Defendants.

**Civ. No. 10871.**

Supreme Court of North Dakota.

Oct. 1, 1985.

Rosenberg & Baird, Bismarck, for plaintiff and appellee; argued by Max D. Rosenberg.

Georgia M. Pope, Jamestown, for defendants and appellants; argued by Georgia M. Pope.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for defendants; no appearance.

ERICKSTAD, Chief Justice.

Defendants Iola Scherbenske and Reuben Scherbenske appeal from a district court judgment in favor of the plaintiff, First Bank of North Dakota (N.A.) Jamestown [First Bank], enforcing four personal guaranties and a promissory note executed by Reuben Scherbenske and a personal guaranty executed by Iola Scherbenske.

Reuben Scherbenske started a construction business in 1959. This business developed into a partnership known as Scherbenske Excavating and Trucking and was owned by Reuben, his wife Iola, and their son Robert Scherbenske. In February 1978 Scherbenske Excavating and Trucking was incorporated and became Scherbenske Excavating, Inc. [SEI]. The corporation started as a business on April 1, 1978. The stockholders of SEI included Reuben Scherbenske and his children Mike Scherbenske, Robert Scherbenske, Sharon Gail Scherbenske, and Pamela Szarkowski. The record does not indicate whether or not Jerome Szarkowski, Pamela Szarkowski's husband, was a stockholder. Iola Scherbenske testified that she was not a stockholder or a member of SEI's Board of Directors, but did work for SEI.

When SEI was formed, the debts and assets of Scherbenske Excavating and Trucking were transferred to SEI. On March 23, 1978, the defendants executed a guaranty to First Bank for all debts of SEI to the extent of $325,000 plus interest. This guaranty was executed to induce First Bank to extend credit to SEI and was signed by each of the seven defendants.

On March 29, 1978, First Bank filed a financing statement covering certain specific collateral owned by SEI, which included this language:

"All inventory and accounts receivable now owned or hereafter acquired."

This financial statement was amended on April 17, 1978, when First Bank filed a financial statement adding to the above sentence of the March 29, 1978, financial statement the words "with the exception of any and all bonded contracts."

On March 31, 1981, Sharon Scherbenske signed a promissory note in favor of First Bank for the amount of $70,800. On that date, Michael Scherbenske also signed a promissory note in favor of First Bank for the amount of $66,920. In conjunction with each of these notes, First Bank obtained a personal guaranty from Reuben Scherbenske for the total amount of each note.

Partial payment has been made on each of these notes.

On July 1, 1981, Reuben Scherbenske for SEI signed a promissory note in favor of First Bank for the amount of $275,000. On that date, First Bank obtained from Reuben Scherbenske a personal guaranty in the sum of $200,000. Reuben Scherbenske and Jerome Szarkowski, for SEI, signed another promissory note on November 4, 1981. This note was for the sum of $200,000.

On July 14, 1982, SEI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

Reuben Scherbenske signed an unsecured promissory note in favor of First Bank in the sum of $11,000 on March 18, 1983. No payment has yet been made on this note.

Payment for each of the aforementioned promissory notes, as well as the original debt of SEI, became overdue. As a result, First Bank brought this action against Reuben Scherbenske as the promisor on the March 18, 1983, note; as the guarantor on the July 1, 1981, note of SEI; as the guarantor on the March 31, 1981, note of Sharon Scherbenske; as the guarantor on the March 31, 1981, note of Mike Scherbenske; and as the guarantor on the original debt of SEI. First Bank then amended its complaint to include Iola Scherbenske, Sharon Scherbenske, Mike Scherbenske, Robert Scherbenske, Pamela Szarkowski, and Jerome Szarkowski as guarantors on the original debt of SEI. The amended complaint also asked for relief from Mike Scherbenske as promisor on the note he signed March 31, 1981, and from Sharon Scherbenske as promisor on the note she signed on March 31, 1981.

This case was brought to trial on March 5, 1984. The trial court found for First Bank. Judgment was entered on June 26, 1984, against each of the seven defendants. Only Iola Scherbenske and Reuben Scherbenske [Scherbenskes] are appealing this judgment.

On April 5, 1984, Scherbenskes filed their voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, First Bank moved to dismiss the appeal on the grounds that the automatic stay provision of 11 U.S.C. Section 362 prohibits this appeal without relief from the automatic stay being granted by the United States Bankruptcy Court.

On September 9, 1985, the day before oral arguments in this Court, the United States Bankruptcy Court for the District of North Dakota issued an order granting relief from the automatic stay to allow Iola and Reuben Scherbenske to proceed with their appeal to our Court. As First Bank has now withdrawn its motion to dismiss the appeal, we shall proceed to the merits of this appeal.

The defendants have raised two issues on appeal. First, whether or not there was consideration given by First Bank in connection with the $325,000 guaranty executed by Iola Scherbenske on March 23, 1978. Only Iola Scherbenske raises this issue. Second, whether or not First Bank unjustifiably impaired the collateral pledged by SEI. This issue is raised by both Iola Scherbenske and Reuben Scherbenske.

### I.

In support of her contention that First Bank gave no consideration in connection with the guaranty, Iola Scherbenske relies heavily on *Union National Bank in Minot v. Schimke*, 210 N.W.2d 176 (N.D.1973). In *Schimke* we affirmed the trial court's dismissal of the Bank's action on the basis of lack of consideration. Iola Scherbenske contends that the circumstances surrounding the guaranty she signed are identical in every material way to those in *Schimke*. We do not agree.

There are significant differences between the situation of Fern Schimke and that of Iola Scherbenske. Fern Schimke did not handle or have knowledge of any business matters. They were all managed by her husband. When her husband wanted her to sign a document, she would do so without any discussion as to the identity of the document, its provisions, or its legal effect. She signed the guaranty under these circumstances. *Schimke*, 210 N.W.2d at 177–178. The facts in the instant case are different. Iola Scherbenske was not completely lacking in knowledge of financial affairs. We recognize that Iola Scherbenske was not a stockholder or officer of SEI and that she testified she was not involved in the financial operations of the corporation. However, Iola's lack of participation in the financial affairs of SEI does not necessarily lead to the conclusion that she did not understand the purpose of the guaranty. She was a partner when the business was a partnership and she worked part time for SEI. Her testimony also indicated that she understood the guaranty was necessary for the corporation to obtain further credit.

More relevant to the issue of consideration are the facts surrounding the actual signing of the guaranties. Fern Schimke signed the guaranty more than two months *after* her husband had signed a promissory note. The signing of the guaranty was not made in conjunction with the signing of the promissory note and the Bank gave no new consideration for the benefit of Fern Schimke or her husband. *Id.* at 177. Iola Scherbenske, on the other hand, signed the guaranty in order to induce First Bank to extend credit to SEI. This was a part of the same transaction which allowed Reuben to pay off his personal obligations and transfer the debts of Scherbenske Excavating and Trucking to SEI. We acknowledge that First Bank did not give a separate and distinct consideration to Iola Scherbenske for her signing of the guaranty. However, separate and distinct consideration is not necessary when the guaranty is entered into at the same time or is a part of the same transaction as the principal obligation. Section 22–01–03, N.D.C.C.;[1] *Schimke*, 210 N.W.2d at 180.

---

1. *"22–01–03. Original obligation sufficient con-* *sideration.—Exception.*—When a guaranty is en-

*See also* 38 Am.Jur.2d *Guarantee* §§ 44–45. Accordingly, we conclude that there was adequate consideration given on behalf of First Bank in connection with the guaranty signed by Iola Scherbenske.

## II.

■ The next contention is that First Bank unjustifiably impaired the collateral pledged by SEI. This allegation is based upon First Bank's amended financial statement, dated April 17, 1978, in which First Bank excluded bonded contracts from its financial statement. The effect of this was that First Bank lost its priority in bonded projects due to its unperfected security interest with respect to those projects. On May 25, 1984, SEI was awarded $781,604 plus interest in an arbitration proceeding. This award arose out of a bonded project with the State of North Dakota. First Bank received no part of this award because it had lost its priority in bonded projects. As First Bank realized it could not receive satisfaction from SEI, this action was brought against the guarantors. Scherbenskes argue that First Bank, in excluding bonded projects from its financing statement, unjustifiably impaired its ability to collect any proceeds from collateral pledged by SEI.

In support of their argument, Scherbenskes direct our attention to *First National Bank in Grand Forks v. Haugen Ford, Inc.,* 219 N.W.2d 847 (N.D.1974). In *Haugen* we adopted the following rule:

"[I]f a creditor receives a mortgage, deed of trust, assignment, or similar conveyance of property of the debtor as security for the debt, knows of the guarantor's obligation, and the recording of such conveyance is necessary so as to make it valid against subsequent judgment creditors and purchasers, it is the duty of the creditor to see that the instrument in his hands is properly recorded, and if he fails to act, the guarantor will be discharged

to the extent of the loss thereby occasioned."

Scherbenskes acknowledge that we also noted in *Haugen* that this right can be waived by the guarantor. *Haugen,* 219 N.W.2d at 852. However, if this "right is to be waived by the guarantor, it should only be by the most unequivocal language in the guaranty agreement." *Haugen, id.* at 852 quoting from *D.W. Jaquays & Co. v. First Security Bank,* 101 Ariz. 301, 419 P.2d 85, 89 (1966). The guaranty signed by Scherbenskes had the following language with respect to their waiver of rights in regards to impairment of collateral:

"*The Bank is expressly authorized* to forward or deliver any or all collateral and security which may at any time be placed with it by the Debtor or any of the undersigned, or any other person, directly to the Debtor for collection and remittance or for credit, or to collect the same in any other manner and *to exchange or surrender with or without consideration any or all of such collateral and security* without notice to any of the undersigned and *without in any manner affecting the absolute liability of any of the undersigned hereunder. The liability of each of the undersigned hereunder shall not be affected or impaired by any failure, neglect or omission on the part of the Bank* to realize upon any such indebtedness of the Debtor to the Bank, or upon any collateral or security for any or all such indebtedness, nor by the taking by the Bank of any other guaranty or guaranties to secure indebtedness of the Debtor to the Bank, nor by the taking by the Bank of collateral or security of any kind." [Emphasis added.]

Scherbenskes claim the language in this guaranty is ambiguous and equivocal and therefore insufficient to support the conclusion that they waived their rights with respect to impairment of collateral. We disagree. In our view, the language clearly

---

tered into at the same time as the original obligation or at the same time as the acceptance of the original obligation by the guarantee and forms, with that obligation, a part of the consid-

eration to the guarantee, no other consideration is necessary. In all other cases there must be a consideration distinct from that of the original obligation."

**160**

authorized the Bank to surrender collateral without affecting the obligations of the guarantors. To hold that this clause of the guaranty was not a waiver of Scherbenskes' rights with respect to impairment of collateral would be to ignore the clear meaning of the words. We cannot do that. We therefore conclude that Scherbenskes validly waived their rights with respect to impairment of collateral.

The judgment is accordingly affirmed.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.