**GENERAL ELECTRIC CREDIT CORPORATION OF TENNESSEE,**
**Plaintiff and Appellee,**

v.

**Ray LARSON and Donald M. Wright,**
**Defendants and Appellants.**

**Civ. No. 11068.**

Supreme Court of North Dakota.

May 15, 1986.

Rosenberg & Baird, Bismarck, for plaintiff and appellee; argued by Max D. Rosenberg; appearance by Roger E. Persinger.

Pearson & Christensen, Grand Forks, for defendants and appellants; argued by Ronald F. Fischer.

LEVINE, Justice.

This is an appeal from a summary judgment granted in favor of General Electric Credit Corporation of Tennessee (GECC) in its action to recover $132,273.31 plus interest on two personal guaranties given to it by Ray Larson and Donald M. Wright. We reverse.

On August 5, 1980, GECC loaned Midwest Aviation, Inc. (Midwest) $573,300 for the purpose of purchasing an airplane. In return for the loan, Midwest executed a promissory note payable in 84 consecutive monthly installments. To secure the note, Midwest pledged a $35,000 certificate of deposit and executed an aircraft chattel mortgage. At the time, Larson and Wright were the sole shareholders and officers of Midwest, and each executed identical personal guaranties for payment of Midwest's debt. On January 1, 1982, Wright sold his interest in Midwest to Larson and resigned as an officer and director of the corporation.

During March 1982, Midwest defaulted on the promissory note. On April 19, 1982, GECC and Midwest entered into a "Stipulation for Release of Property" in a bankruptcy proceeding involving Mid-State Oil Company, a separate corporation owned by Larson. The parties agreed that the value of the airplane was $240,000 and that this sum, when added to the value of the certificate of deposit, was "insufficient to liquidate the entire indebtedness owing to" GECC. The stipulation, which was approved by the bankruptcy court, further provided that:

"General Electric Credit Corporation upon obtaining possession of the aircraft and authority to cash the certificate of deposit and apply the sale proceeds of said certificate to its indebtedness, the same shall be in full satisfaction of any debt owing to it by the said Midwest Aviation, Inc., and Mid-State Oil Co. and any of its subsidiaries."

Neither Larson nor Wright were parties to the stipulation in their individual capacities.

GECC sold the airplane for $175,000 at a private sale and subsequently sued Larson and Wright, as the guarantors, for the balance remaining due on the promissory note. Larson and Wright claimed that GECC's settlement with Midwest "in full satisfaction" of the debt operated to discharge their liability as guarantors pursuant to § 22-01-15, N.D.C.C. GECC contended that Larson and Wright waived their right to exoneration and discharge by virtue of a provision in the guaranty agreements. The district court agreed with GECC, concluding that "unequivocally clear and unambiguous" language in the guaranty agreements constituted a valid waiver by Larson and Wright of "any defense surrounding the disposition of the collateral supporting the debt of Midwest." This appeal followed.

It is undisputed that under the terms of § 22-01-15, N.D.C.C., GECC's settlement with Midwest "in full satisfaction" of the debt would normally operate to exonerate or discharge Larson and Wright from any remaining liability as guarantors. *See generally First Federal Sav. and Loan Ass'n v. Scherle*, 356 N.W.2d 894, 896 (N.D.1984); 38 Am.Jur.2d *Guaranty* § 78 (1968); 38 C.J.S. *Guaranty* § 77 (1943). It is a well-established rule of law, however, that the discharge of the principal debtor through release or settlement does not relieve the guarantor of liability where the right of recourse against the guarantor is expressly reserved in the guaranty agreement.[1] *See*

1. Some courts have also held that the right of recourse against the guarantor may be reserved

*United States v. Krochmal*, 318 F.Supp. 148, 151 (D.Md.1970); *Howard v. Associated Grocers*, 123 Ariz. 593, 601 P.2d 593, 595 (1979); *McGill v. Idaho Bank & Trust Co.*, 102 Idaho 494, 632 P.2d 683, 686 (1981); *Fruehauf Trailer Co. of Canada, Ltd. v. Chandler*, 67 Wash.2d 704, 409 P.2d 651, 653 (1966). The dispositive issue in this case is whether the personal guaranty agreements executed by Larson and Wright contained a waiver of the defense of discharge by satisfaction of the principal's obligation. The language relied upon by GECC provides:

"The extension of the time of payment or the renewal of Accounts or the extension of the time of performance of agreements or any other indulgence may be granted to Customer and/or any secondary obligors on any of said Accounts without notice to undersigned and all settlements, compromises, compositions, accounts stated and agreed balances made in good faith between any secondary obligors on any Account and Customer or you shall be binding upon the undersigned...."

■ The construction of a written contract to determine its legal effect is a question of law for the court to decide, and on appeal, this court will independently examine and construe the contract to determine if the district court erred in its interpretation of it. *Poyzer v. Amenia Seed and Grain Co.*, 381 N.W.2d 192, 194 (N.D. 1986). The liability of a guarantor will not be enlarged beyond the plain and certain import of the contract of guaranty. *Rheault v. Tennefos Construction Company*, 189 N.W.2d 626, 630 (N.D.1971). We have stated that a guarantor's waiver of rights with respect to impairment of collateral can only be accomplished " 'by the most unequivocal language in the guaranty agreement.' " *1st Bank of N.D. (N.A.) v. Scherbenske*, 375 N.W.2d 156, 159 (N.D.1985) [quoting *First Nat. Bank in Grand Forks v. Haugen Ford, Inc.*, 219

N.W.2d 847, 852 (N.D.1974)]. We also note that a contract of guaranty which contains ambiguous or uncertain terms will be interpreted most strictly against the party who prepared it, in this case GECC. *Watkins Products Incorporated v. Anhorn*, 193 N.W.2d 228, 229 Syllabus 4 (N.D. 1971).

■ The above-quoted language does not constitute a clear and unequivocal waiver of the defense of discharge by satisfaction of the principal's obligation. By signing the agreement, Larson and Wright did not agree to remain liable under such circumstances, but merely agreed that GECC could grant extensions and other indulgences to Midwest without notice to them and that any settlement agreements between GECC and Midwest would be binding on them. There is no express language in the agreement that Larson and Wright would remain liable to GECC after a settlement with Midwest in full satisfaction of the debt.

GECC's argument hinges on the phrase "or any other indulgence." GECC contends that its settlement with Midwest in full satisfaction of the debt, which was a satisfaction for a sum less than the full amount due, constituted an "indulgence" granted to Midwest which became "binding upon" Larson and Wright. We disagree.

■ The phrase "or any other indulgence" is preceded in the guaranty agreements by the language "[t]he extension of the time of payment or the renewal of Accounts or the extension of the time of performance of agreements...." Although the term "indulgence" has been generally defined as "a favor or privilege," in a business sense it means "an extension of time to make payment on a bill or note, granted as a favor." Webster's New World Dictionary 718 (2d College Ed.1976). Under the rule of *ejusdem generis*, general words which follow particular words in a

---

in the contract releasing or discharging the principal debtor. *See Lilenquist Motors, Inc. v. Monk*, 64 Wash.2d 187, 390 P.2d 1007, 1008 (1964); *Continental Bank & Trust Co. v. Akwa*, 58 Wis.2d 376, 206 N.W.2d 174, 183 (1973). No such reservation of rights appears in the bankruptcy stipulation in this case.

contract are to be construed as being of the same class, kind, or nature as the particular words. *Atlas Ready-Mix of Minot v. White Properties,* 306 N.W.2d 212, 222 (N.D.1981). Applying this rule of construction, it is evident that the phrase "or any other indulgence" relates to favors granted to Midwest with regard to the time, method, and manner of accounting for the installments as they became due pursuant to the terms of the promissory note, and does not extend to a settlement with Midwest in full satisfaction of the debt. *Cf. Magazine Digest Pub. Co. v. Shade,* 330 Pa. 487, 199 A. 190, 192, 193 (1938) [guaranty providing that "publisher ... may in his absolute discretion and without diminishing the liability of the guarantor ..., grant time or other indulgence to the distributor ..." did not include right to change basic consideration of contract, but allowed publisher "to extend the time for payment or grant other favors to the distributor with regard to the terms and manner of accounting for the amounts coming due under the contract."]

GECC asserts that this court's decision in *Scherbenske, supra,* supports its argument that Larson and Wright expressly and unequivocally waived their right to raise the defense of exoneration under the circumstances. In *Scherbenske,* we held that the guarantors had validly waived their rights with regard to impairment of collateral. The language of the guaranty at issue in *Scherbenske,* however, clearly provided that " '[t]he Bank is expressly authorized ... to exchange or surrender with or without consideration any or all of such collateral and security ... without in any manner affecting the absolute liability of any of the undersigned hereunder. The liability of each of the undersigned hereunder shall not be affected or impaired by any failure, neglect or omission on the part of the Bank....' " 375 N.W.2d at 159.

[Emphasis deleted.] The guaranty agreement in this case contains no such express and unequivocal waiver.

A review of guaranties which have been found to constitute valid waivers of the defense of discharge of the guarantor upon a release or settlement with the principal debtor further demonstrates the inadequacy of Larson and Wright's guaranties for this purpose. *See, e.g., Krochmal, supra,* 318 F.Supp. at 149; *Maestro Music, Inc. v. Rudolph Wurlitzer Company,* 88 Ariz. 222, 354 P.2d 266, 268 (1960); *McGill, supra,* 102 Idaho at 497, 632 P.2d at 686; *Chandler, supra,* 67 Wash.2d at 705–706, 409 P.2d at 652.

To interpret the language of the guaranties in this case in the manner asserted by GECC would render meaningless the requirement that such waivers must be clear and unequivocal. We conclude that the district court erred in its interpretation of the language in the guaranty agreements as constituting valid waivers of the defense that GECC's settlement with Midwest in full satisfaction of the debt discharged Larson and Wright as guarantors. Accordingly, the summary judgment is reversed and the case is remanded for the entry of judgment in favor of Larson and Wright.

ERICKSTAD, C.J., VANDE WALLE and MESCHKE, J.., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.