**UNITED STATES of America, Plaintiff,**

v.

**Boyd GLOVER and Bonnie D. Glover, husband and wife, Margie L. Clark, as representative of or successor in interest for Herman L. Clark, Deceased, Les Carlson, Jr., and Vernon Embry, Defendants.**

**No. CIV–75–0954–D.**

United States District Court,
W. D. Oklahoma.

Dec. 19, 1977.

John E. Green, Acting U. S. Atty. by Givens L. Adams and Richard F. Campbell, III, Asst. U. S. Attys., Oklahoma City, Okl., for plaintiff.

William L. Dean, Oklahoma City, Okl., for defendants Glover.

Bruce M. Brill, Oklahoma City, Okl., for defendant Clark.

Jerome S. Sepkowitz, Oklahoma City, Okl., for defendants Carlson and Embry.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Following a non-jury trial in this action in which Plaintiff seeks judgment on certain guaranties, the Court makes the following findings of fact, conclusions of law and decisions herein:

On January 8, 1973 the Plaintiff through the Small Business Administration (SBA) lent the sum of $75,000 to Venus Electronics Corporation (Venus). In connection therewith Venus, through its President, the Defendant Boyd W. Glover (Glover), executed and delivered to SBA a promissory note, a security agreement covering certain property and a Small Business Administration Loan Agreement.

Defendant Glover and wife Bonnie D. Glover, and Defendant Herman L. Clark (Clark) and wife Margie L. Clark executed on January 8, 1973 an unconditional guaranty of personal liability on said loan. The guaranty was delivered to the SBA and guaranteed payment of the said debt owed by Venus.

Said note executed by Defendant Glover states that, "the indebtedness shall immediately become due and payable without notice or demand, upon . . . the reorganization (other than a reorganization pursuant to any of the provisions of the Bankruptcy Act of 1898, as amended) or merger or consolidation of the undersigned (or the making of any agreement therefor) without the prior written consent of Holder . . ."

On June 20, 1973 a meeting of the stockholders of Venus took place at which an election of Directors was held and the composition of the majority of the Board was changed. At that time Defendant Glover owned approximately 38% of the shares of Venus. The Defendants Les Carlson, Jr., (Carlson), Vernon Embry (Embry) and Herman L. Clark among others were elected to the Board of Directors.

At a subsequent meeting an election of officers took place with Defendant Glover not being re-elected to the office of President. Defendant Glover thereafter refused to turn over the records or keys of Venus to the new officers. An injunction suit was then brought in State Court against Defendant Glover by Defendants Carlson and Embry and others. A meeting was then held attended by Defendants Glover, Clark, Embry, Carlson and others wherein a discussion of the sale of Defendant Glover's stock to Defendants Carlson, Embry and Clark was discussed.

An agreement was thereafter entered into on August 20, 1973 between Clark and Defendants Glover in which Defendants Glover agreed to sell their 261,250 shares of Venus stock to Defendant Clark or his assigns for $50,000. The agreement for the purchase by Clark or his assigns of the shares of Defendants Glover provided that, if required, the approval of the SBA be obtained regarding the sale, and also required that Defendants Glover be held harmless on the $75,000 loan owed to the SBA. On August 24, 1977 Defendant Glover wrote the SBA requesting his release from the guaranty of January 8, 1973. This request of Glover for release from the guaranty was denied by the SBA and Glover was so notified verbally and later in writing under date of September 10, 1973.

Defendants Glover demanded as a condition of their sale of 261,250 shares of Venus stock that Defendants Carlson and Embry execute a guaranty on the $75,000 loan for the purpose of reducing Defendants Glover's potential personal liability on said loan. Clark and wife were already guarantors. Defendants Carlson and Embry agreed to this and supplied their guaranty to SBA. The Defendants Glover would not have sold part of their stock to Carlson and Embry without Carlson and Embry executing their guaranty to SBA.

Defendant Glover told the SBA that Defendants Carlson and Embry, along with one John Stone who did not sign the guaranty, were agreeable to offering the SBA their personal guaranty of the said $75,000 loan in connection with his sale of some of his Venus stock to them. James R. Baker, SBA Loan Officer, filled out and mailed an SBA guaranty form to Venus as a result of this information from Defendant Glover. The SBA received back said guaranty dated September 10, 1973 which bore the signatures of Defendants Carlson and Embry. Stone did not sign the same. The SBA advised Defendant Glover that it had received such guaranty form.

Prior to the sale of the Glover stock, Jon Rice of the SBA had conversations with Defendants Carlson and Embry in which Rice stated to them that the signing of a guaranty by Defendants Carlson and Embry was required by the SBA in connection with their purchase of Glover stock. This conclusion by Jon Rice appears to have been predicated on the belief that the change in operating control and sale of 38% of the outstanding shares of Venus stock constituted a reorganization within the meaning of the loan papers and as such would allow the SBA to declare the indebtedness immediately due and payable. However, Rice testified that he did not mention to anyone that a reorganization of Venus was underway. He testified that he told Carlson and Embry that their guaranty was required. He based this advice he now says on a reorganization of Venus or perhaps on SBA policy. He further testified that Carlson and Embry did not request SBA to forbear from calling the note. Rice and James R. Baker, the other SBA witness, both testified that they did not know what they would have done regarding the Venus loan if Carlson and Embry obtained some of the Glover stock and would not furnish SBA their guaranty on the Venus loan, except

Baker testified that he probably would have sought legal advice.

On September 6, 1973 Defendant Glover received $25,000 from Defendant Clark as payment for the sale of part of the 261,250 shares owned by Defendant Glover to Clark. On September 17, 1973 Defendant Glover was paid $12,500 by Defendant Carlson and $12,500 by Defendant Embry for the purchase by them of the remaining Glover shares. At this time Venus was not in default on its SBA note.

On or about September 20, 1974 Venus failed to make payment on its obligation to the SBA. On March 7, 1975 the SBA declared the debt of Venus to be delinquent and thereafter accelerated the note. Venus was agreeably liquidated by sale on June 26, 1975 which left a balance due on the note and under the guaranties in the amount of $28,290.60 as of July 25, 1977 and with daily interest accruing thereafter at the rate of $3.89.

From the evidence presented the Court finds that the foregoing are the facts of this case deemed pertinent to the controversy involved in this litigation in which Plaintiff seeks a judgment against all guarantors for the above balance.

Federal law applies herein. 15 U.S.C. 634; distinguish *United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404. The Court finds that this was not an SBA loan negotiated or hand tailored with reference to Oklahoma law. It was a routine nation wide act of SBA. *See Knudson v. Weeks,* 394 F.Supp. 963 (W.D. Okl.1975). Plaintiff established a prima facie case by introducing in evidence the note, security agreement, loan agreement, the two guaranties signed by the Defendants and the sworn transcript of account. *United States v. Irby,* 517 F.2d 1042 (Fifth Cir. 1975). By way of defense Defendants Carlson and Embry assert that said guaranty signed by them dated September 10, 1973 is not enforceable for lack of consideration; that lack of consideration is present because there was not a reorganization of Venus as contemplated by the SBA loan papers and otherwise the sale of the Glover stock to them did not require the prior approval of SBA.

Plaintiff agrees that Venus was not reorganized within the meaning of the SBA loan papers when Defendants Glover sold their stock. But Plaintiff asserts that the SBA at the time of the sale of the stock by Glover to Carlson and Embry honestly believed in good faith that there was a reorganization of Venus, told Defendants Carlson and Embry this and would have called the loan had it not received the guaranty of the new stockholders, Carlson and Embry, who succeeded to some of the stock of Defendants Glover; that Defendants Carlson and Embry knew the above and furnished a guaranty to avoid the calling of the loan; that in these circumstances a valid consideration existed for the Carlson and Embry guaranty. Plaintiff also claims the Carlson and Embry guaranty is supported by a valid consideration in that it was a part of the stock sale transaction between them and Defendants Glover; that Defendants Glover would not have sold a part of their stock in Venus to Carlson and Embry without their personal guaranty of the previous Venus loan to SBA; that Carlson and Embry agreed to this as a part of the Venus stock sale transaction as evidenced by their signing and mailing the guaranty to SBA. Plaintiff further asserts that it was a third party beneficiary of the Venus stock sale between Defendant Glover and Defendants Carlson and Embry to include the Carlson and Embry guaranty in that Defendants Glover with knowledge that they would not be released of their guaranty would not have sold their stock to Defendants Carlson and Embry unless they also gave their personal guaranty to SBA to reduce their potential liability on their earlier personal guaranty should resort be had to the same.

In *Frishman v. Canadian Imperial Bank of Commerce,* 132 U.S.App. 169, 407 F.2d 299 (1968), the Court said:

> "There is a doctrine, dating from at least a hundred years back in the common law, that a forbearance asked and given may constitute a consideration for a guarantee."

Under this rule of law a valid consideration would have been present for the Carlson and Embry guaranty had there been forbearance by SBA regarding its rights under the loan papers to declare the Venus note due and payable upon the reorganization of Venus.[1] And this perhaps would be true even though SBA was in error about there being in fact a reorganization of Venus within the meaning of the loan papers. But the Court finds and concludes that Plaintiff's evidence does not support either theory of forbearance as providing a consideration for the Carlson and Embry guaranty. First, as aforesaid, Plaintiff admits that there was in fact no reorganization of Venus within the contemplation of the loan papers. Second, the record herein fails to disclose that either of the two SBA witnesses who testified herein had any discussions of any kind with either Defendants Glover or Defendants Carlson and Embry regarding Venus being reorganized and that SBA so considered a reorganization to be underway and would declare the note of Venus due and payable by reason thereof unless SBA got the additional guaranty from Carlson and Embry. Hence, Plaintiff's evidence fails to support its theory of SBA forbearance to call the note because of Venus reorganization on either the basis of there being a reorganization in fact or the erroneous belief on the part of SBA that there was a reorganization of Venus with a calling of the note to occur unless the Carlson and Embry guaranty was forthcoming. See *Frishman v. Canadian Imperial Bank of Commerce, supra.* Plaintiff's evidence does mention that it was the unwritten policy of SBA to obtain additional guaranties from purchasers of large (20%) blocks of stock in the debtor. But Plaintiff's evidence does not establish what SBA would do if it did not obtain the guaranties required by this unwritten policy. Hence, Plaintiff's evidence also fails to establish SBA forbearance in this case on the basis of an alleged unwritten SBA policy. In other words, Plaintiff's evidence fails to establish that

the SBA told either Defendants Glover or Carlson and Embry that if Carlson and Embry did not furnish their guaranty pursuant to the said unwritten policy, the SBA would declare the Venus note due and payable.

The Court concludes, however, that the Carlson and Embry guaranty may be enforced by Plaintiff as the same is supported by a valid consideration present in the Venus sale transaction between Defendants Glover and Carlson and Embry. As previously stated the Court finds that Defendants Glover demanded the Carlson and Embry guaranty on the outstanding Venus loan with SBA before they would sell some of their Venus stock to said parties and that Carlson and Embry agreed to this and signed their guaranty and sent the same to SBA. Indeed, in the absence of an agreed forbearance by SBA from calling the loan (which Defendants Carlson and Embry deny occurred), there is no reason why Carlson and Embry would give their personal guaranty for the balance due on the $75,000 Venus loan except as a part of their Venus stock sale transaction with Defendants Glover. The evidence is quite clear that Defendants Glover tried to obtain from SBA a release of their personal guaranty on the SBA loan and failed and that they wanted Carlson and Embry as additional guarantors on said loan in connection with the sale of part of their Venus stock to them. This consideration between Defendants Glover and Defendants Carlson and Embry for the issuance of the Carlson and Embry guaranty to SBA is sufficient to allow SBA to enforce the same against Carlson and Embry upon default of the guaranteed loan. 38 C.J.S. *Guaranty* § 26 (1943) provides that "it is immaterial that the consideration moves from the principal obligor and not from the one to whom the offer of guaranty is made." [Subsection a at 1162–63.] This text further states that "[i]t is not necessary that any consideration pass directly from the guarantee to the guarantor,

---

1. Plaintiff admits that the loan papers involved herein gave it no right to call the Venus loan in September, 1973 because of the sale of all the

Glover stock or the change in officers, directors or management of Venus.

and consideration moving from the original obligor to the guarantor is sufficient to support the guaranty contract." [Subsection c at 1166]. As authority for the latter statement, the authors cite *Florida Asphalt Pavement Mfg. Co. v. Federal Reserve Bank of Atlanta,* 76 F.2d 326 (Fifth Cir. 1935), *cert. denied,* 296 U.S. 577, 56 S.Ct. 87, 80 L.Ed. 407 (1935). Rules and principals governing the requisites and validity of contracts generally are applicable to contracts of guaranty. *See* 38 Am.Jur.2d *Guaranty* §§ 1, 26 (1968); 38 C.J.S. *Guaranty* § 8 (1943). The Restatement of Contracts § 75 (1932) provides in subsection (2) that "Consideration may be given to the promisor or to some other person. It may be given by the promisee or by some other person." The authors' comments under this section indicate that "[i]t matters not from whom the consideration moves or to whom it goes. If it is bargained for as the exchange for the promise, the promise is not gratuitous." "Generally speaking, if consideration is sufficient for a contract in other respects, it does not matter from or to whom it moves. The consideration may move to the promisor or a third person, and may be given by the promisee or a third person." 17 Am.Jur.2d *Contracts* § 94 (1964). "Any benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not lawfully entitled . . . is held to be a sufficient consideration for the promise. . . . the consideration to support a promise need not involve a benefit to the promisor; it is sufficient if the benefit is derived solely by a third person." *Id.* § 96.

It is evident that what Defendants Glover feared did come to pass—the failure of Venus under its new management and the SBA looking to its guarantors for the deficiency after the agreed sale of the loan security. Defendants Glover wanted this additional guaranty, Carlson and Embry willingly gave it, SBA was only too glad to obtain additional guarantors and now Defendants Glover and Plaintiff are entitled to have this facet of the sale of the Venus stock to Carlson and Embry recognized and enforced for such benefit as it may afford

them. A valid consideration was present to support the Carlson and Embry guaranty to SBA.

As the Court has found the Carlson and Embry guaranty to have been supported by a valid consideration and is enforceable herein, it is believed that this answers Plaintiff's last contention that Plaintiff was the third party beneficiary of the Venus stock sale agreement between Defendants Glover and Defendants Carlson and Embry.

Defendants Glover assert that their personal guaranty to Plaintiff is not enforceable. Their position in this respect appears to be that Plaintiff impliedly abandoned their guaranty as to them or accepted the guaranty of Defendants Carlson and Embry in substitute therefor; that the Defendants' Carlson and Embry guaranty shows that it was intended to be a substitute for the Glover guaranty. However, Defendants Glover acknowledge and admit that they attempted to be released by SBA of the obligation of their guaranty at the time they were considering the sale of some of their stock to Defendants Carlson and Embry and that such requested release of liability was denied by Plaintiff. The Carlson and Embry guaranty contains no language of substitution. In these circumstances it is clear that there was no abandonment or substitution and Defendants Glover are liable on their guaranty to Plaintiff.

Original Defendant Margie L. Clark has been dropped by Plaintiff as a party herein due to her taking bankruptcy. Defendant Herman L. Clark is deceased and on motion of Plaintiff Margie L. Clark as his representative has been substituted as Defendant in his place. Defendant Herman L. Clark as so substituted is in default and has presented no defense to Plaintiff's request that it have judgment against Herman L. Clark or his estate on his personal guaranty to the SBA. Plaintiff is entitled to a default judgment against said Defendant with reference to his guaranty on the loan.

Counsel for Plaintiff will prepare an appropriate Judgment based on the foregoing and submit the same for entry herein.