**J. E. HARDING, Plaintiff,**
**v.**
**Cameron D. A. TRENOR, Defendant.**
**Civ. No. 3363.**

United States District Court
D. North Dakota, S. W. D.
Dec. 30, 1957.

H. A. Mackoff and Ward M. Kirby (of Mackoff, Kellog, Muggli & Kirby), Dickinson, N. D., for plaintiff.

L. E. Greenwood and H. D. Swanson (of Greenwood & Swanson), Dickinson, N. D., for defendant.

REGISTER, Chief Judge.

This is a diversity case wherein plaintiff, a citizen and resident of the state of

North Dakota, seeks equitable relief quieting title to certain real property in himself. Defendant is a resident and citizen of the state of Washington; the amount in controversy, exclusive of interest and costs, exceeds $3,000. The property in dispute is situated in Billings County, North Dakota, and is more fully described as follows:

All of fractional Section Twenty-one (21), Township One Hundred Thirty-nine (139) North of Range One Hundred Two (102) West of the Fifth Principal Meridian, containing 582.76 acres, more or less, according to United States Government Survey.

Plaintiff, J. E. Harding, was, in 1933, the owner of the above described premises, which was the ranch-house site and key stone section of land occupied, controlled and operated in the early 1880's as the Chimney Butte (Maltese Cross) Ranch by the late ex-President Theodore Roosevelt, with Sylvanus Ferris and William Merrifield as his ranch foremen. On February 13, 1933, plaintiff executed an "Option-Contract", vesting in defendant's father and predecessor in title, W. O. Trenor, the exclusive right to purchase the land in question of $7,500. The option was to run for a period of three years from date thereof. On the 6th day of December, 1933, W. O. Trenor exercised his option to buy under the aforesaid contract, and an instrument entitled "Deed of Bargain and Sale" was executed by plaintiff in accordance with the terms and provisions of said "Option-Contract".

The consideration received by plaintiff and recited in the conveyance of December 6, 1933, was as follows: $620.99 in cash, the assumption by W. O. Trenor of $1,480 in notes (secured by mortgage), and a note in the amount of $5,-399.01 made by W. O. Trenor, due March 13, 1936, and secured by an expressly reserved vendor's lien against the property now in dispute. The receipt of said cash was acknowledged, by plaintiff, by the terms of said instrument; the notes assumed (being in the principal sum of $1,480) were duly paid by W. O. Trenor.

The due date of the $5,399.01 note, made payable to J. E. Harding and bearing the signature of W. O. Trenor as maker, was extended, on November 19, 1936, for a period of five years from the date of endorsement, thus providing for a new due date of November 19, 1941. The note bore interest at the rate of five per cent per annum after the original maturity date, March 13, 1936.

W. O. Trenor came to North Dakota from Roanoke, Virginia, with an apparent purpose in mind of acquiring and memorializing the property in dispute as a shrine to the memory of the late ex-President Theodore Roosevelt. Apparently Mr. Trenor intended to finance the acquisition of the Maltese Cross Ranch by public contributions throughout the country. In this endeavor he was unsuccessful, and as a result negotiations with the plaintiff commenced, the culmination of which was the execution of the instrument now under consideration.

The plaintiff in his complaint has asked for relief in the alternative, in effect praying that (a) the instrument of sale be declared cancelled and forfeited, or (b) the note and instrument of sale be reformed to reflect the true intention of the parties by declaring same to be a contract of sale, and that same be foreclosed, or (c) that plaintiff be declared to have due and owing to him under the said note and Deed of Bargain and Sale the sum of $5,399.01 and interest thereon at the rate of five per cent per annum from the 13th day of March, 1936; that the plaintiff be decreed to have a lien as vendor herein on and against the land and premises described in the Complaint for the security and satisfaction of the existing indebtedness mentioned in the Complaint, and that such lien be established and confirmed and that the same be foreclosed; and for other and further general equitable relief.

Defendant, in his Answer, pleads several defenses—including the statute of limitations, laches on the part of plaintiff, and alleged facts as basis for estop-

pel; defendant also counterclaims, praying that title to said premises be quieted in him, that plaintiff be ordered to account for rents and profits from said property, and for other general relief.

The first question subject to determination by this Court is whether the instrument entitled "Deed of Bargain and Sale" executed by plaintiff J. E. Harding on December 6, 1933, is in fact a deed to the property in question, or a contract for deed only.

Section 9–0705, NDRC, 1943, requires that when through fraud, mistake, or accident a written contract fails to express the real intention of the parties to such contract, then such intention is to be regarded and the erroneous parts of the writing disregarded. Inasmuch as plaintiff has, by amendment to his original complaint, alleged fraud on the part of W. O. Trenor in the preparation and execution of the instrument now under consideration, this Court will attempt to ascertain the true intent of the parties as it existed at the time of contracting.

When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible. Section 9–0704, NDRC, 1943. The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. Section 9–0702, NDRC, 1943. Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together. Section 9–0707, NDRC, 1943.

Plaintiff has attempted to point out certain ambiguities in the instrument which would require the Court to look outside the instrument itself to determine the intent of the parties at the time of contracting. However, careful examination of the document reveals no inconsistency or ambiguity. In the opinion of this Court, the language and clauses employed in the instrument, when read together, are clear and explicit, and require no parol evidence as an aid to a correct interpretation of same.

The instrument contains the following provision:

"It is mutually understood and agreed by the parties hereto that the party of the first part agrees that all operations and improvements, from this date, conducted and made on the above described property are to be at the sole expense and peril of the party of the first part, and the party of the second part hereby agrees that the party of the first part may continue, unmolested, upon the said premises, without the payment of rent, until all of the above described notes, with the accured (sic) interest thereon, are fully paid according to their face and tenor, effect and reading, when good and sufficient Release Deeds shall be delivered to the party of the second part or to his executors, administrators, successors or assings (sic) * * *."

Plaintiff contends that that certain clause which provides that plaintiff Harding "may continue, unmolested, upon said premises, without the payment of rent, until all of the above described notes, with the accrued interest thereon, are fully paid" is inconsistent with and repugnant to that general covenant of warranty wherein it states that "the said party of the second part (W. O. Trenor, grantee) shall have quiet and peaceable possession of the said tract of land, free from the claims of all parties whomsoever". Plaintiff further contends that the inclusion of the phrase "and that he (Harding) will execute such further assurances of title to said tract of land as may be requisite and necessary" indicates that the parties anticipated that something further must be done in order that the conveyance be effective, and that said instrument is executory only.

These contentions, in the Court's opinion, are without merit. Section 47–1003, NDRC, 1943, provides that "An agreement on the part of a seller of real property to give the usual covenants binds him to insert in the grant covenants of seizin, quiet enjoyment, further assurance, general warranty, and

against encumbrances". The provision whereby the seller (Harding) is allowed to remain on the premises, unmolested, and without the payment of rent, until certain notes were paid by the buyer (W. O. Trenor) constitutes a personal covenant between the parties to the transaction and is in no way inconsistent with the covenants required by the above cited statute. The Court is also satisfied that the parties, by the use of the words "Release Deeds" intended to and did refer to a release or satisfaction of the expressly reserved vendor's lien.

It is axiomatic that an ambiguous instrument is to be interpreted most strongly against the party who caused the uncertainty or ambiguity to exist. This rule of construction, however, is applied only where ambiguity or uncertainty exists; in this case it is the Court's determination that such ambiguity or uncertainty does not exist, hence said rule of construction is inapplicable. Section 47–0913, NDRC, 1943, requires that a grant "shall be interpreted in favor of the grantee, except that a reservation in any grant * * * is to be interpreted in favor of the grantor".

■ The instrument of conveyance is replete with language and terms indicating that it is a deed, and not a contract for deed. It is entitled "Deed of Bargain and Sale". The first sentence thereof states that "This Deed of Bargain and Sale, made and entered into * *". After certain recitation, names and addresses of the parties, statement of the consideration, etc., the instrument provides that " * * * the said party of the first part has this day granted, bargained, sold, released and conveyed and by these presents does grant, gargain (sic), sell, release and convey unto the said W. O. Trenor, with convenants of General Warranty of title, all that certain tract or parcel of land * * *". The fact that the seller expressly reserved a vendor's lien is itself indicative of a completed sale. Certainly such reservation in an instrument is not consistent with a contract for sale. The fact that only the seller's signature appears on the

instrument indicates that it is a deed. The execution and delivery "of this Deed" was witnessed by two disinterested persons; documentary stamps in the amount of $7 were affixed, in compliance with the federal internal revenue laws requiring such stamps to be affixed to any "deed, instrument, or writing, whereby any lands * * * shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers * * *". The internal revenue law does not require that such documentary tax stamps be affixed to contracts for deed. Plaintiff has never, since the date of the transaction, paid any of the real property taxes assessed against the premises; this expense was borne by W. O. Trenor until May 7, 1953, when the original grantee, Mr. W. O. Trenor, conveyed the premises to his son, the defendant here, Cameron D. A. Trenor. Since that date, the defendant has paid the real property taxes.

Ever since December 6, 1933, the date of the transaction between plaintiff and W. O. Trenor, plaintiff has resided on the premises and farmed them as his own, without the payment of rent, as permitted by the terms of the conveyance. He has made certain permanent improvements on the property of a value, by his own determination, of $6,000 or $7,000. This also he had a right to do under the provisions of said conveyance. Neither defendant nor his father, W. O. Trenor, have ever been in actual possession of the property; however, certain incidents of ownership have been exercised by defendant and W. O. Trenor which indicate that W. O. Trenor, and now defendant, is in fact the owner of the property in question. As stated above, all property taxes since 1933 have been paid by defendant or his father; the property is subject to a certain oil and gas lease, the benefits of which are being derived by defendant. Said oil and gas lease was executed by W. O. Trenor and wife, as lessors, and was dated the 3rd day of January, 1952. Though plaintiff has executed leases, as lessor, to oil and gas in and under real property which he

owns adjoining the premises in question, he has never negotiated for nor executed leases to the oil and gas in and under the property which is the subject matter of this lawsuit.

All of the above facts lead inescapably to the conclusion that the instrument executed by plaintiff on December 6, 1933, in favor of W. O. Trenor, is in fact a deed to the property described therein, and was understood and intended to be such by the respective parties thereto.

Having determined that the instrument under consideration is a deed (and not a contract for deed, as is contended by plaintiff) the question arises as to whether or not the expressly reserved vendor's lien contained in the instrument can now be enforced or whether plaintiff's remedy thereon is barred by the applicable statute of limitations.

■ It is clear that this issue may be resolved by determining whether or not an expressly reserved vendor's lien (as distinguished from the usual lien im-

plied by law) is to be considered a real estate mortgage, so as to bring it within the exception set out in the statutory provision tolling the statute of limitations because of absence from the state.

The complaint in this action was filed in August, 1956. Plaintiff's cause of action for foreclosure of the vendor's lien arose on November 19, 1941, the date to which the note which accompanied the deed was extended. Although defendant denied in his Answer that the note referred to has not been paid, he produced no affirmative evidence at the trial of this case which would substantiate such denial. Furthermore, at the time of trial plaintiff produced and placed in evidence, as an exhibit, the original promissory note which, according to the uncontroverted testimony of plaintiff, has been in his possession at all times since it was executed and delivered to him on December 6, 1933. On the face thereof appear the words "Secured by Vendors Lien Maltese Cross Ranch". On the back of said note appears the following:

"Dallas, Texas, November 19, 1936.

For one dollar ($1.00), cash in hand paid, and other serious and valuable considerations, the receipt of all of which are this day hereby acknowledged and confessed, I, J. E. Harding, of Medora, North Dakota, the undersigned holder and owner of this $5,399.01 note, have this day extended the payment of same for a period of five (5) years *from this date*, unless, the maker hereof—W. O. Trenor, of Roanoke, Virginia, should, in the meantime, sell or dispose of the property securing this note, and in this case, this note shall automatically become due and payable, in cash, including the accrued interest thereon.

"/s/   J. E. Harding   (Seal)

"J. E. Harding

"Witness:
"/s/   W. O. Trenor

"W. O. Trenor"

———————◆———————

■■ The Court is unaware of any North Dakota decision squarely holding that an expressly reserved vendor's lien is, in fact, a mortgage. However, the greater weight of authority in other jurisdictions appears to so hold. See Alabama-Florida Co. v. Mays, 111 Fla.

100, 149 So. 61, and cases cited therein, and reported at 91 A.L.R. 139. The expressly reserved vendor's lien is the result of a written contract between the buyer and seller; it is a lien created by contract, and not by implication of law. " * * * where a lien for the unpaid

purchase money is expressly reserved in the vendor's conveyance, *this constitutes in equity a mortgage of the land* as security for the price, which may be assigned and transferred and which may be enforced by bill or action for foreclosure." (Emphasis added.) 59 C.J.S. Mortgages, § 14i. "An express lien reserved in the deed of conveyance or other instrument is to be distinguished from the technical vendor's lien or implied lien; it is a lien by contract and not by implication. *The lien thus reserved is a security in the nature of a mortgage, and has been said to be in reality a mortgage.*" (Emphasis added.) 92 C.J.S. Vendor & Purchaser § 378b(1).

The United States Supreme Court, in the case of Ober v. Gallagher, 93 U.S. 199, 206, 23 L.Ed. 829, in determining that an assignment of a debt secured by an expressly reserved lien in a deed transfers the security, stated that " * * * here the lien was not left to implication: it was expressly reserved. In fact, it is more than a lien. *In equity, it is a mortgage*, so made by express contract". (Emphasis added.)

Section 35-0102, NDRC, 1943, defines a lien as "a charge imposed upon specific property by which it is made security for the performance of an act". Section 35-0201, NDRC, 1943, defines a mortgage as "a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession". Hypothecation is a term borrowed from the civil law, and means a contract of mortgage or pledge—a right existing in one person over specific property of another, which right consists of a power to cause a sale of the property in order that a specific claim of the creditor may be satisfied out of the proceeds. Black's Law Dictionary, Fourth Edition, page 877. The acceptance by W. O. Trenor of the deed containing such reservation amounted to an express agreement on his part that said land should be held as security for the payment of what he owed on account of the purchase money, and this created an equitable mortgage. The fact that the deed and contract hypothecating the property were embodied in one instrument does not change the nature or effect of the transaction; there is no requirement in North Dakota that a mortgage must be created by separate instrument. It is true, as pointed out by plaintiff's counsel, that a "North Dakota Standard Form" of real property mortgage is prescribed by statute. Section 35-0305, NDRC, 1943. However, such form is neither mandatory nor exclusive. The question is whether or not the expressly reserved vendor's lien in this case is a mortgage as defined by state law.

The parties to this action have asked the Court for an equitable determination of their dispute. For the reasons heretofore stated, it is the opinion of this Court that the expressly reserved vendor's lien contained in the deed given by plaintiff must, for the purpose of determining the applicability of the tolling provision of the statute of limitations, be determined to be a mortgage on the real property described in said deed.

In North Dakota two separate and distinct remedies are available to a creditor for the satisfaction of a debt secured by mortgage; he may either sue, within the time limits allowed by statute, on the principal obligation or seek to satisfy the debt by action of foreclosure on the mortgage. "The contract in a note and the contract in a mortgage given to secure the debt represented by the note are separate contracts, each governed by its own statute of limitations. * * *" Lincoln National Life Insurance Co. v. Kelly, 73 N.D. 622, 17 N.W.2d 906, 909. "A ten year statute of limitations applies to any contract contained in any mortgage affecting the title to real property. A six year statute applies to the note. Neither statute extinguishes the debt. Each bars the remedy to which it applies." Lincoln National Life Insurance Co. v. Kelly, supra. This " * * * being the effect and operation of the statute, it follows that the remedy against the debtor on his personal liability may be barred by lapse of time and yet the remedy upon the mort-

gage remain available; and it is likewise apparent that the converse is true, the remedy for the enforcement of the mortgage may be barred although an action at law against the debtor is still maintainable." Colonial & United States Mortg. Co. v. Northwest Thresher Co., 14 N.D. 147, 103 N.W. 915, 918, 70 L.R.A. 814.

Section 28–0115, NDRC, 1943, provides that any proceeding for the foreclosure of a mortgage upon real estate must be commenced within ten years after the cause of action has accrued. Plaintiff's cause of action in this case, as has been stated heretofore, arose on November 19, 1941, the date on which the principal obligation (note) became due him. Thus, plaintiff's remedy by foreclosure of the mortgage was barred, on November 19, 1951, unless the tolling provision applicable to the statute of limitations applies.

The saving statute referred to above is Section 28–0132, NDRC, 1943, and reads as follows:

"28–0132. Absence from State Tolls Limitations; Exception. If any person shall be out of this state at the time a cause of action accrues against him, an action on such cause of action may be commenced in this state at any time within the term limited in this chapter for the bringing of an action on such cause of action after the return of such person into this state. If any person shall depart from and reside out of this state and remain continuously absent therefrom for the space of one year or more after a cause of action shall have accrued against him, the time of his absence shall not be taken as any part of the time limited for the commencement of an action on such cause of action. *The provisions of this section, however, shall not apply to the foreclosure of real estate mortgages by action or otherwise.*" (Emphasis added.)

There is no dispute but that W. O. Trenor, the debtor, was absent from this state, except for one or two short visits, continuously from November, 1941, until his death in 1953. Therefore, were it not for the exception contained in the last sentence of the above quoted statutory provision, the statute of limitations, as applied to the mortgage, would not have run. However, in view of the exception referred to, the statute of limitations has run, and plaintiff's remedy by way of foreclosure of the mortgage is now barred. By this determination, the Court in no way rules that the debt is extinguished, or that the remedy on the principal obligation (that is, the note) is barred; that question is not now before the Court.

■ As heretofore stated, the deed specifically provides that plaintiff may continue, unmolested, upon the premises, without the payment of rent, until all of the consideration, with accrued interest thereon, is fully paid. The grantee, W. O. Trenor, expressly agreed to this provision, and by his acceptance of such deed did expressly agree that the plaintiff could so continue upon said premises until fully paid. This deed was duly recorded. Furthermore, actual knowledge on the part of the defendant of this specific provision of said deed is apparent from the facts and circumstances in evidence. The defendant is bound thereby.

By reason of the foregoing, it will be the order of this Court that:

(1) J. E. Harding, plaintiff, may continue, unmolested, upon the premises in question, without the payment of rent, in accordance with the terms and provisions of the deed conveying the property to W. O. Trenor, until such time as the debt remaining on the purchase price is paid in full or is otherwise satisfied; and

(2) That at such time as the debt remaining on the purchase price is paid in full to plaintiff, J. E. Harding, title to the property in question be quieted in the name of Cameron D. A. Trenor, defendant herein.

Counsel for plaintiff will prepare and submit to the Court appropriate Find-

ings, Conclusions, Order for Judgment and Judgment, in accordance herewith, and will serve a copy thereof upon opposing counsel.

It Is So Ordered.