A.W. POYZER and Bonita Poyzer, Plaintiffs and Appellees,

v.

The AMENIA SEED AND GRAIN COMPANY, a North Dakota Corporation, Defendant,

and

Cargill Incorporated, a Delaware Corporation, Defendant and Appellant.

Myrtle H. POYZER, Plaintiff and Appellee,

v.

The AMENIA SEED AND GRAIN COMPANY, a North Dakota Corporation, Defendant,

and

Cargill Incorporated, a Delaware Corporation, Defendant and Appellant.

Civ. Nos. 10934, 10935.

Supreme Court of North Dakota.

Jan. 22, 1986.

Nilles, Hansen, Magill & Davies, Fargo, for plaintiffs and appellees; argued by John Michael Nilles.

Arntson, Wentz & Klein, Fargo, for defendant and appellant; argued by Daniel L. Wentz.

GIERKE, Justice.

Cargill, Incorporated [Cargill], appeals from summary judgments of foreclosure on two real estate mortgages given by Amenia Seed and Grain Company [ASGC] to A.W. and Bonita Poyzer (Civil No. 10,-934), and Myrtle Poyzer (Civil No. 10,935). Cargill does not challenge the propriety of the foreclosures, but attacks the district court's treatment in the foreclosure judgments of a prior unrecorded real estate mortgage allegedly given by ASGC to Cargill.

A.W. Poyzer was the general manager and president of the board of directors of ASGC. A.W. and his wife Bonita jointly owned 51 percent of the outstanding shares of the company. Myrtle Poyzer is the mother of A.W. and owned "six or seven" shares in the company. Her late husband had previously served as general manager of ASGC from 1945 until his death in 1973.

For a number of years Cargill financed the operations of ASGC, which dealt in the buying and selling of grains and sunflower seeds. On March 16, 1981, Cargill and ASGC entered into an agreement, entitled "Security Agreement," in which Cargill agreed to make open account financing in the amount of $250,000 available to ASGC. The agreement also provided in relevant part:

"2. As collateral for the loan to be made by Cargill pursuant to this Agreement and as condition for making said loan, Elevator agrees to and does hereby grant to Cargill a continuing security interest in and mortgage of the following:

\* \* \* \* \* \*

"(c) Elevator's property interest in the land underlying Elevator's facility at Amenia, North Dakota, and all buildings, structures, fixtures, machinery, vehicles, and equipment now located thereon or hereafter acquired and located thereon.

"When requested by Cargill, Elevator agrees to evidence said security interest and mortgage by providing Cargill with properly executed Financing Statements, real estate mortgages, leasehold assignments, and other documents, as appropriate, acceptable for filing under the state and local laws of North Dakota. All of said documents shall be incorporated into and become a part of this Agreement when and as executed. At Cargill's request, Elevator shall assign to Cargill warehouse receipts covering all grain inventories."

A.W., who was general manager at the time, signed the document as an attesting witness. He was appointed president of the board of directors in May 1981. Although Cargill filed UCC-1 Financing Statements after the agreement was executed, no real estate mortgage was recorded in the county records.

During May 1981, A.W. and Bonita loaned ASGC $50,000 in return for a promissory note payable May 15, 1982. To secure the note, ASGC granted to the Poyzers a mortgage to a portion of its property, lots 1 through 8 and 13 through 15 in block 4 to the City of Amenia. The mortgage was recorded on June 30, 1981. Myrtle Poyzer also loaned ASGC $40,000 in return for a promissory note payable May 15, 1982. As security for the note, ASGC granted to Myrtle a mortgage to another portion of its property, lots 9 through 12 in block 4 to the City of Amenia. This mortgage was also recorded on June 30, 1981.

ASGC was declared insolvent in March 1982 and defaulted under the provisions of its financial arrangements with Cargill and the Poyzers. During May 1982, Cargill sought and obtained a judgment in United States District Court against ASGC for approximately $500,000. The judgment was levied upon, and the property of ASGC was sold at public auction, with Cargill purchasing lots 1 through 15 of block 4 in Amenia. ASGC did not redeem the property. The Poyzers were not parties in the federal court action.

The Poyzers commenced two separate foreclosure actions in 1983. The Poyzers and Cargill filed motions for summary judgment. The district court granted the Poyzers' motions for summary judgment of foreclosure on their respective mortgages. The district court ruled that the March 16, 1981 agreement between ASGC and Cargill was not a valid real estate mortgage under the provisions of Chapter 35–03, N.D.C.C., and in the alternative, that the Poyzers were, as a matter of law, bona fide encumbrancers for value without notice of Cargill's prior unrecorded mortgage.

Cargill asserts that the district court erred in ruling that the March 16, 1981 agreement did not constitute a valid real estate mortgage. The court ruled that the agreement was invalid as a mortgage mainly because it does not resemble the form recommended in § 35–03–05, N.D.C.C.; because it does not contain "a specific description of the real estate as required by" § 35–03–01.1, N.D.C.C.; and because the "evidence" provisions at the end of Paragraph 2 of the agreement could only be interpreted to mean that the "Agreement was not the real estate mortgage but was a promise by Amenia Seed to execute additional documents to effect the mortgage."

In determining whether a written instrument constitutes a mortgage, the same general rules that govern interpretation of contractual agreements apply. *See Mortgage Bank & Inv. Co. v. Hanson*, 3 N.D. 465, 57 N.W. 345 (1894); 9 G. Thompson, Commentaries on the Modern Law of Real Property § 4670 (1958). The construction of a written contract to determine its legal effect is a question of law for the court to decide, and on appeal, this court will independently examine and construe the contract to determine if the trial court erred in its interpretation of it. *Miller v. Schwartz*, 354 N.W.2d 685, 688 (N.D.1984).

The intention of the parties to a written contract must be ascertained from the writing alone if possible. § 9-07-04, N.D.C.C.

 It is not dispositive that the March 16, 1981 agreement is not in the form set forth in § 35-03-05, N.D.C.C. The standard form set forth in the statute is not a mandatory prerequisite to the creation of a valid mortgage between the parties to the transaction. *Northwestern Fed. Sav., Etc. v. Ternes*, 315 N.W.2d 296, 302 (N.D.1982); *see also Harding v. Trenor*, 157 F.Supp. 350, 356 (D.N.D.1957). There is no requirement that a mortgage be created by a separate instrument. *Harding, supra.*

Section 35-03-01.1(1), N.D.C.C., defines a mortgage as:

"... a contract by which specific real property capable of being transferred is hypothecated for the performance of an act without requiring a change in possession, and includes a transfer of an interest in real property, other than a trust, made only to secure the performance of an act."

The Poyzers assert that the property description in the document, *i.e.*, "Elevator's property interest in the land underlying Elevator's facility at Amenia, North Dakota," does not describe "specific real property" as the term is used in the statute, and thus the description is fatally deficient and the document fails under North Dakota law as a valid mortgage of real property. We disagree.

 The term "specific property" has been defined as "property capable of identification." *France v. Hart*, 170 So.2d 52, 53 (Fla.Dist.Ct.App.1964). The generally accepted rule with regard to the sufficiency of a description of mortgaged property, at least insofar as the parties to the transaction are concerned, appears to be that a mortgage is void only if the description is so faulty that the land cannot be located. In 9 G. Thompson, *supra*, § 4664 at pp. 54-58, the author states:

"The purpose of the description is to furnish the means of identification, and the general rule is that a description is sufficient if it is such that the mortgaged property may be located. That is certain which may be made certain. An accurate description of the premises is of great importance as affecting the value of the security, and oftentimes affecting as well the interest of the mortgagor and of persons holding title under him. But a description, however general and indefinite it may be, furnishes a key if by intrinsic evidence it can be made practically certain what property it was intended to cover, will be sufficient to sustain the lien. A mortgage is not void on account of an indefinite description of the property. The mere fact that a mortgage contains an indefinite description does not void the instrument....

"... A mortgage 'of all my estate,' or 'of all my lands wherever situated,' or 'of all my property,' is not invalid by reason of the generality of the description." [Footnotes omitted.] *See also* Annot., 55 A.L.R. 162 (1928).

This court's decisions are in accord with the general rule. In *Security Building & Loan Ass'n v. Costello*, 66 N.D. 179, 263 N.W. 712 (1935), a plaintiff mortgagee asserted that a pre-existing mortgage held by the defendant was void because it did not contain a sufficient description of the mortgaged premises. The court found it unnecessary to "go into the particulars concerning the misdescription" because it was "immaterial so far as the validity of the mortgage claim here is concerned." *Costello, supra*, 263 N.W. at 713. The court determined that the defendant's mortgage was effective as against the mortgagor, and stated "[t]he fact of the misdescription, even though it were such as to render the mortgage ineffective as against an innocent encumbrancer, cannot help the plaintiff who took with knowledge of all the facts in connection with the matter." *Costello, supra*, 263 N.W. at 713-714. *Cf. E.E.E., Inc. v. Hanson*, 318 N.W.2d 101, 106 (N.D.1982) [where no innocent third parties were involved, misdescription of the underlying note was not fatal to the mort-

gage]; *see also Mueller v. Bohn,* 41 N.D. 537, 171 N.W. 255 (1919).

It is undisputed in this case that there is only one ASGC elevator facility in Amenia. We hold that the March 16, 1981 agreement is not void as a mortgage by reason of an insufficient description of the property.

The Poyzers also assert that the phrase in the agreement, "When requested by Cargill, Elevator agrees to evidence said ... mortgage by providing Cargill with properly executed ... real estate mortgages ... acceptable for filing ..." establishes that the agreement is "no more than a promise to execute a mortgage later if requested by Cargill."

The whole of a written instrument is to be construed together so as to give effect to every part if reasonably practicable. Section 9–07–06, N.D.C.C. The agreement also specifically states that ASGC "agrees to and does hereby grant to Cargill a ... mortgage of ... Elevator's property interest in the land underlying Elevator's facility at Amenia, North Dakota." When read in conjunction with the language relied on by the Poyzers, the latter language merely obligated ASGC, upon request, to evidence in recordable form the legal relationship which was created between the parties by the prior language.

We have also considered the other contentions raised by the Poyzers in support of their assertion that no legally enforceable mortgage was created between Cargill and ASGC through the March 16, 1981 agreement and find them unpersuasive. With regard to this issue, the agreement is unambiguous. The agreement constitutes a valid mortgage between Cargill and ASGC under North Dakota law, and the district court erred in concluding otherwise.

Section 47–19–46, N.D.C.C., provides in part that "[a]n unrecorded instrument is valid as between the parties thereto and those who have notice thereof." Cargill asserts that the district court erred in concluding that, as a matter of law, A.W., Bonita, and Myrtle Poyzer were bona fide encumbrancers without actual or constructive notice of the unrecorded ASGC-Cargill mortgage.

The determination of whether an individual is a bona fide encumbrancer for value without notice presents a mixed question of fact and law. *See Nygaard v. Robinson,* 341 N.W.2d 349, 353 (N.D.1983); *Earth Builders, Inc. v. State, Etc.,* 325 N.W.2d 258, 259 (N.D.1982). Summary judgment under Rule 56, N.D.R.Civ.P., should be granted only if, after taking the view of the evidence most favorable to the party against whom summary judgment is sought, it appears that there are no genuine issues as to material facts, or that there are no conflicting inferences to be drawn from undisputed facts. *Albers v. NoDak Racing Club, Inc.,* 256 N.W.2d 355, 358–359 (N.D.1977).

We believe that genuine issues of material fact exist regarding whether A.W., Bonita, and Myrtle had actual or constructive notice of the prior unrecorded ASGC–Cargill mortgage. A.W. signed the ASGC–Cargill mortgage as an attesting witness. At the time the document was executed, A.W. served as ASGC's general manager. He was appointed president of its board of directors shortly thereafter, in May 1981. A.W. and his wife Bonita jointly owned 51 percent of the outstanding stock of ASGC. Although Bonita claims that she had no knowledge of any particular agreements between ASGC and Cargill, the record reflects that she was aware that ASGC owed money to Cargill and that Cargill financed the operation. Myrtle is the mother of A.W. and was a shareholder in ASGC. Myrtle testified through deposition that she loaned ASGC $40,000 at the request of A.W. and that she and her son discussed the business and financial condition of ASGC on several occasions. Because conflicting inferences can be drawn from these undisputed facts concerning whether the Poyzers had actual or constructive notice of the prior ASGC-Cargill mortgage, we conclude that the district court erred in granting summary judgment against Cargill on the ground that the

Poyzers, as a matter of law, were bona fide encumbrancers without notice.

In accordance with this opinion, Civil No. 10,934 is reversed with regard to the district court's determinations that the ASGC–Cargill agreement did not constitute a valid mortgage between the parties and that, as a matter of law, A.W. and Bonita Poyzer were bona fide encumbrancers without notice. We remand for trial on the issue of whether A.W. and Bonita were bona fide encumbrancers without notice.

Civil No. 10,935 is likewise reversed with regard to the district court's determinations that the ASGC–Cargill agreement did not constitute a valid mortgage between the parties and that, as a matter of law, Myrtle Poyzer was a bona fide encumbrancer without notice. We remand for trial on the issue of whether Myrtle was a bona fide encumbrancer without notice.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.