2017 ND 287

**Robert and Teryl GANNAWAY, Plaintiffs and Appellees**

**v.**

**Nadir TORRES and Terra Nova Developments, LLC, an involuntarily dissolved North Dakota Limited Liability company, LND 10, LLC, a Minnesota Limited Liability Company, and all other persons unknown claiming any interest in, or lien or encumbrance upon, the property described in the complaint, Defendants**

**and**

**William and Karen Schneider, Defendants and Appellants**

No. 20170092

Supreme Court of North Dakota.

Filed 12/7/2017

Rehearing Denied Jan. 24, 2018

Michael L. Forman, Southlake, TX, for plaintiffs and appellees.

Randall J. Bakke (argued), Shawn A. Grinolds (on brief), and Wade A. Davison (on brief), Bismarck, ND, for defendants and appellants William and Karen Schneider.

Jensen, Justice.

[¶ 1] William and Karen Schneider appeal from a judgment entered by the district court, determining Robert and Teryl Gannaway were entitled to quiet title, free and clear of the Schneiders' mortgage. We affirm the district court's judgment quieting title in the Gannaways and determining the Schneiders were not good-faith purchasers for value without notice.

I

[¶ 2] Robert and Teryl Gannaway filed a complaint on June 3, 2015 against Nadir Torres, Terra Nova Developments, LLC ("Terra Nova"), William and Karen Schneider, and any other encumbrancers of their property. The Gannaways sought to quiet title to the property after it was fraudulently conveyed, and the Schneiders secured a mortgage on the property.

[¶ 3] In May 2014, the Gannaways signed a real estate purchase and sale contract, which provided for a conveyance of their property to Terra Nova for a purchase price of $15,360,000. The Gannaways also signed a document Torres represented to be a "notary page to the purchase agreement" at the Farm Credit Services office. Nadir Torres told the Gannaways "he needed it notarized for whoever the people were that he was working with, to show them that—you know, that [Robert Gannaway] had actually signed it." After the Gannaways had the additional page notarized, Torres and the Gannaways went to the courthouse to record the sale contract. Torres went into the recorder's office alone, told Robert

Gannaway the filing was completed, and they left the courthouse.

[¶ 4] Robert Gannaway noted that after they had the separate document notarized, Torres was looking at the documents and said he believed he could make them work. Robert Gannaway thought it was an odd statement to make about the sale contract, but did not inquire further. When Robert Gannaway requested a copy of the signed documents, Torres sent the signed page to the sale contract in a text message to Robert Gannaway and the notarized page to a third party. At trial, an additional signed two-page land agreement providing for the conveyance of a portion of the Gannaways' property to Nadir Torres was admitted as evidence. However, Robert Gannaway testified he never signed that document and believed the signatures were cut and pasted onto the two-page land agreement.

[¶ 5] On August 18, 2014, Torres recorded the quitclaim deed conveying the property to himself from the Gannaways. On October 23, 2014, Torres recorded a separate quitclaim deed conveying the property from himself individually to Terra Nova. In connection with the quitclaim deed to Terra Nova, Torres also signed and recorded an affidavit of the Gannaways' marital status.

[¶ 6] Robert Gannaway testified he believed Torres removed a portion of a signature page from a different document and pasted it onto the quitclaim deed. When the Gannaways signed the sale contract on May 22, 2014, Torres did not mention anything about a quitclaim deed to the Gannaways. Robert Gannaway said the front page to the quitclaim deed was not attached to the notarized page when he signed it. He also testified that he never signed a deed in connection with the transaction. Teryl Gannaway, Robert Gannaway's wife, testified that when she signed

the notarized signature page, it was not attached to a quitclaim deed. Additionally, the sale contract provided for a conveyance from the Gannaways to Terra Nova, not to Torres. The Gannaways became aware of this quitclaim deed only after their son discovered the deed by chance while doing other title work at the end of 2014 or early 2015.

[¶ 7] After signing the sale contract, Robert Gannaway met with Torres and gave him the abstracts for the property so they would be updated for closing, but the closing date was never set and the Gannaways were never contacted by a title company. Additionally, the Gannaways never received the $250,000 earnest money from Terra Nova or Torres specified in the sale contract. The Gannaways believed the deal with Terra Nova and Torres was no longer moving forward.

[¶ 8] Paul Heinle, of Bismarck Title Company, testified Torres wanted him to handle the title work and closing on the disputed property in the summer of 2014. Heinle noted the following details of the transaction with Torres seemed peculiar: (1) Terra Nova was the named purchaser in the sale contract, but the quitclaim deed showed the grant was to Torres personally; (2) the quitclaim deed included a notation that it was prepared by Bismarck Title Company, but no one in that office prepared the deed; (3) the lender was to be determined; (4) the affidavit of marital status was self-serving on Torres' part; (5) the transaction was abnormal because this was a fifteen million dollar deal with a pre-signed quitclaim deed; and (6) Torres represented the transaction was exempt from filing a consideration statement under N.D.C.C. § 11–18–02.2(6)(c), now codified at N.D.C.C.§ 11–18–02.2(7)(c), which is for transferring property between family or corporate affiliates. Heinle noted that a deal of this size would normally be handled through a warranty deed executed at the time of closing.

[¶ 9] When Heinle asked Torres about the quitclaim deed, Torres said he wanted Heinle to change the title work:

> to reflect him as being an owner and showing that more or less it would have been free and clear title.... [T]here were some mortgages on the property with Farm Credit Services. He wanted them removed and he wanted the ownership changed to reflect him as an owner after he emailed me this deed.

After Heinle told Torres he could not give him a letter saying he was the owner with free and clear title, Torres cancelled the transaction with Bismarck Title Company and went to work with Quality Title. Heinle testified he discovered two mortgages with Farm Credit Services that included the disputed property when he completed a title search on the property. Robert Gannaway testified he paid off one mortgage from Farm Credit Services on July 22, 2014, and the release was recorded on October 17, 2014.

[¶ 10] The Schneiders executed a loan agreement and promissory note secured by the disputed property to Torres on August 28, 2014. The Schneiders loaned Torres $400,000 and transferred the money via wire transfer. Before executing the loan agreement, Torres confirmed to the Schneiders that he owned the land personally, free and clear of any encumbrances. The Schneiders were told they had the first lien on the property with no other encumbrances by Quality Title on August 20, 2014, North Dakota Guaranty and Title Company on August 29, 2014, and through a title opinion from a Bismarck lawyer on September 23, 2014. The first time the Schneiders learned about the problems with the property was when they were served in this action. The Schneiders did not recall an explanation as to why the

loan was to Torres individually when the project was in Terra Nova's name. Additionally, the Schneiders wired the loan money to an account registered to Terra Nova, not Torres, which the Schneiders did not inquire further about. The Schneiders relied on Quality Title and their attorney to advise them of any encumbrances on the property. At the time of trial, the Schneiders had not received any payment from Torres on the loan agreement or promissory note. The Schneiders also stipulated to a judgment against Torres, which left for trial only the issue of whether the Schneiders' mortgage was still valid on the Gannaway property.

[¶ 11] The district court concluded the Gannaways were entitled to quiet title. The district court also determined the Schneiders had constructive notice of the fraud by failing to inquire about the ownership of the property or exercising reasonable diligence before executing the mortgage. Therefore, the district court concluded the Schneiders had no valid encumbrance upon the Gannaway property. The Schneiders appealed the district court's judgment.

## II

[¶ 12] The district court concluded the quitclaim deed conveying the property to Torres was void and inoperative to pass an interest to the Schneiders. The Schneiders argue the district court's findings of fact are unsupported by the evidence and are clearly erroneous. Also, the Schneiders argue the evidence does not support a finding of fraud in the execution of the quitclaim deed. "Fraud and deceit are questions of fact which will not be set aside on appeal unless clearly erroneous." *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 25, 730 N.W.2d 841. This Court has determined:

> A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is not sup-

ported by any evidence, if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law.

*Id.* at ¶ 13 (citing *Pfeifle v. Tanabe*, 2000 ND 219, ¶ 7, 620 N.W.2d 167). However, the legal conclusion of whether the deed is void or voidable is a question of law, fully reviewable on appeal. *See Moran v. Williston Coop. Credit Union*, 420 N.W.2d 353, 356 (N.D. 1988) (determining the district court correctly ruled as a matter of law that a contract was void rather than voidable).

[¶ 13] In its findings of fact, the district court determined Torres committed actual and constructive fraud by attaching the notarized page to the quitclaim deed. Further, the district court stated, "Torres' actions constituted fraud in the execution of the quitclaim deed purporting to convey the Property from Plaintiffs to Torres. Therefore, the quitclaim deed is void and inoperative to pass an interest in the Section 2 Property to the Schneiders."

[¶ 14] This Court has concluded:

> A deed that is absolutely void passes no title. It gives no constructive notice and a claim of bona fides may not be based upon a void instrument, even when placed of record in the manner prescribed by statute.

> A deed obtained by fraud is sometimes void, but more often is merely voidable, depending on the facts on which the claim of fraud is based.

> Uniformity does not prevail among the courts as to the circumstances of fraud which will render a deed void and inoperative as against the claims of an innocent purchaser. It would seem, however, that in such cases the innocent purchaser should be protect-

ed unless the fraud is clear, unequivocal, and its force undiminished by lack of care on the part of a mentally competent, defrauded grantor.

*Hoffer v. Crawford*, 65 N.W.2d 625, 631 (N.D. 1954) (citations and quotation marks omitted).

[¶ 15] In *Hoffer*, the plaintiffs did not recall signing a specific mineral deed and sought to invalidate a subsequent mineral deed purchase by grantees who had no notice of the previous fraud. 65 N.W.2d at 628. The plaintiffs believed they only signed a mineral lease and one mineral deed. *Id.* At trial, the plaintiffs testified one of the defendants only moved the top document enough to see where to sign the documents. *Id.* The plaintiffs claimed they believed the bottom document was only a copy, not a separate deed. *Id.* at 629. This Court concluded the plaintiffs did not attempt to move the top document to inspect the one below or give any explanation why they did not realize they were separate documents, and the defendant testified he explained each separate document to the plaintiffs. *Id.* This Court concluded the fraud was in the inducement and did not void the subsequent conveyance of mineral rights to a third party. *Id.* at 630. This Court concluded the plaintiffs were intelligent people with considerable business experience and were negligent because they did not "exercise that care and caution which would be normal under all of the circumstances." *Id.* at 630–31. Because the plaintiffs failed to read the bottom document and the subsequent grantee had no notice of any irregularity in the deed, this Court held the fraudulent deed was voidable and could pass title to subsequent purchasers. *Id.* at 633.

[¶ 16] When there is a question of whether a title is void or voidable in relation to a good-faith purchase, this Court has held:

The general rule in this State, and in others, is that a good-faith purchaser for value will prevail if his grantor was possessed of voidable title. While a deed that is absolutely void passes no title, before a court of equity will declare a deed void as against the rights of an innocent purchaser, a fraud which goes to the execution of the instrument, rather than its inducement, must be proved.

*Nodland v. Plainsmen Petroleum, Inc.*, 265 N.W.2d 252, 255 (N.D. 1978). This Court also noted:

Where the rights of an innocent purchaser may be affected by holding the deed inoperative to pass title, only unusual circumstances, such as misreading the instrument to a blind or illiterate person, fraud on a mentally defective person, the surreptitious substitution of one instrument for another, or representation of its contents by a person in whom the grantor is entitled to place confidence, will support a plea of fraud as to the character of the instrument.

*Hoffer*, 65 N.W.2d at 632 (citation and quotation marks omitted).

[¶ 17] Here, like in *Hoffer*, the Gannaways are intelligent people who signed a stand-alone notarized page they said they knew nothing about. The Gannaways were misled by Torres to believe the notarized page was only for seeking financing. The Gannaways read the document, but the evidence supports the conclusion that Torres attached the Gannaways' signatures onto the quitclaim deed without their knowledge. Further, the Gannaways testified they had no knowledge of any quitclaim deed when they executed the sale contract. The district court's conclusion that Torres committed fraud was supported by the evidence because the Gannaways were unaware of the quitclaim deed, did not intend to convey their property to Torres personally, and Torres misled them

by stating the notarized page was only going to be used to seek financing. The district court did not clearly err in finding Torres committed fraud when he acquired the property from the Gannaways.

[¶ 18] As noted in *Hoffer*, the fraud must be related to the execution of the instrument to render a deed void. Although the district court did not clearly err in concluding Torres committed fraud, in determining the deed was void rather than voidable, the district court failed to note whether the fraud was related to the execution or inducement of the deed. In this case, this Court need not determine whether the deed was void as the result of fraud in the execution or voidable due to fraud in the inducement. This Court will only determine a deed is void in unusual circumstances, and even if there has been fraud in the execution before determining a deed to be void, the fraud must be undiminished by the grantor's negligence. *See Glascoe v. Bracksieck*, 85 N.W.2d 423, 426 (N.D. 1957) (stating even when there is fraud in the execution of an instrument an innocent purchaser will be protected when there is a lack of ordinary care by a competent defrauded grantor). The Gannaways were misled by Torres' statements about the documents, but did not inquire further about the stand-alone notarized page or what Torres was recording at the courthouse. The district court should have considered the Gannaways' conduct in relation to the fraud as required under *Hoffer*. However, despite concluding the deed was void, the district court correctly analyzed whether the Schneiders were good-faith purchasers for value. The district court's conclusion that the Schneiders were not good-faith purchasers makes the determination of whether the deed was void or voidable unnecessary to the resolution of this dispute.

## III.

[¶ 19] The Schneiders argue their mortgage should be upheld because they are good-faith encumbrancers for value without notice of the fraud and because the Gannaways' negligence contributed to the fraud. Although the district court determined the deed was void and could not pass title to a subsequent purchaser, the district court further concluded the Schneiders had constructive notice of Torres' fraud and were not good-faith purchasers for value without notice. Accordingly, the district court determined the Gannaways were entitled to the property free and clear of the Schneiders' mortgage. The determination of whether a party is a good-faith encumbrancer for value without notice is a mixed question of fact and law. *Poyzer v. Amenia Seed & Grain Co.*, 381 N.W.2d 192, 196 (N.D. 1986).

> The factual circumstances relating to events surrounding the transaction—the realities disclosed by the evidence as distinguished from their legal effect—constitute the findings of fact necessary to determine whether a party has attained the status of a good faith purchaser without notice. A court's ultimate determination that a party is not a good faith purchaser for value is a conclusion of law, because that determination describes the legal effect of the underlying factual circumstances.

*Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 768 (N.D. 1996) (citations omitted). This Court reviews findings of fact under a clearly erroneous standard, while conclusions of law are fully reviewable on appeal. *Pfeifle*, 2000 ND 219, ¶ 7, 620 N.W.2d 167.

[¶ 20] The district court did not clearly err in determining the Schneiders had constructive notice of the fraud. Section 1-01-25, N.D.C.C., defines constructive notice and provides, "[e]very person who has ac-

tual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." In *Hoffer*, this Court determined subsequent purchasers with no information about any irregularities in the previous conveyance were good-faith purchasers for value without notice. 65 N.W.2d at 633.

[¶ 21] Here, unlike *Hoffer*, the district court determined there were facts which put the Schneiders on notice of the fraudulent transaction. Through Heinle's testimony about Torres' behavior and requests, the district court heard evidence about other mortgages on the property. The Schneiders failed to investigate the project or inquire about certain documents conveying property to Torres, individually, while others were to convey property to Terra Nova. Further, the quitclaim deed from the Gannaways to Torres noted it was exempt from filing requirements under N.D.C.C. § 11–18–02.2(7)(c), which exempts "[a] sale when the grantor and the grantee are of the same family or corporate affiliate, if known." This statement on the quitclaim deed from the Gannaways to Torres, in combination with the other inconsistencies, raised a duty to inquire because the Schneiders would have had no reason to believe Torres was related to or had a corporate affiliation with the Gannaways. There are several inconsistencies with Torres' interest in the property, which would put a reasonably prudent person on notice to inquire further.

[¶ 22] The evidence supports the district court's conclusion, and the district court did not clearly err in its findings of fact. The evidence supports a finding that the Schneiders were not good-faith encum-

brancers for value without notice. We conclude the district court properly quieted title in the Gannaways and determined they own the property free and clear of the Schneiders' mortgage. We affirm the district court's judgment determining the Schneiders were not good-faith purchasers for value because facts existed which would have put a reasonable person on notice of Torres' fraud and unclear title.

IV

[¶ 23] We affirm the district court's judgment quieting title in the Gannaways and determining the Schneiders were not good-faith purchasers for value without notice.

[¶ 24] Jon J. Jensen

Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Gerald W. VandeWalle, C.J.