UNITED STATES of America, acting Through FARMERS HOME ADMINIS-TRATION, UNITED STATES DEPART-MENT OF AGRICULTURE, Plaintiff,

v.

HAAS FRUIT CO., INC., Defendant.

No. CY–91–3067–JBH.

United States District Court,
E.D. Washington.

Jan. 28, 1993.

William H. Beatty, Asst. U.S. Atty., Spokane, WA, for plaintiff.

John S. Moore, Velikanje, Moore & Shore, Inc., P.S., Yakima, WA, for defendant.

FINDINGS OF FACT, AND
CONCLUSIONS OF
LAW

HOVIS, United States Magistrate Judge.

THIS MATTER came on for trial on January 26, 1993. The plaintiff was represented by William H. Beatty, Assistant United States Attorney. Defendant was represented by John S. Moore of Velikanje, Moore and Shore, Inc. P.S. The plaintiff presented evidence in the form of testimony of Connie J. Crawford, Tanya Irene Reek and Robert C. Van Pelt and Exhibits 1 through 6, 7 through 13, and 15 through 16, together with the cross-examination of defendant's witnesses. The defendant presented evidence in the form of cross-examination of the plaintiff's witnesses, testimony of Gregory Scott Beyer, Steven Douglas Forney and Exhibits 101 through 106.

In the pretrial order, the following facts were agreed upon by the parties and required no proof.[1]

1. Dwight and Theresa Holloway and Ed and Joan Roles, principals of Thunderbird Orchards, Inc. (hereinafter "Thunderbird"), accumulated a substantial debt. One of Thunderbird's major creditors was Forney Fruit Co., Inc., predecessor to Haas Fruit Co., Inc., the defendant (hereinafter "Forney" and "Haas" respectively).

2. In 1985, Thunderbird gave a security interest in its farm equipment to Forney. Forney perfected its security interest by

---

1. The changes from the pretrial order are grammatical and do not change the parties' intent.

filing UCC financing statement # 85–073–0816.

3. On July 31, 1986, Farmers Home Administration (hereinafter "FmHA") made two emergency loans to Thunderbird, in the amount of $278,000.00 and $100,000.00, respectively.

4. In consideration of said loans, Thunderbird and FmHA entered into an agreement, marked as Plaintiff's Exhibit 8, to give FmHA a security interest in the subject farming equipment.

5. FmHA perfected its security interest in said farming equipment by filing financing statement # 86–097–0417 marked as Plaintiff's Exhibit 10.

6. FmHA and Thunderbird agreed to apply a portion of the loan funds directly to the debt owed by Thunderbird to Forney.

7. In anticipation of the loan, FmHA requested that Thunderbird send a Request for Statement of Debts and Collateral to Forney. Thunderbird sent this request, marked as Plaintiff's Exhibit 3. The representation was made, with authority, by Ron Rockstrom.

8. On July 31, 1986, Thunderbird, plaintiff and defendant entered into a subordination agreement, marked as Plaintiff's Exhibit 1, in the State of Washington.

9. Steven D. Forney read and signed the Subordination Agreement as president and secretary of defendant. Mr. Forney had authority to sign such document.

10. On August 1, 1986, the loan closing agent, Schreiner Title Co., mailed a check in the amount of $288,216.31 to Forney.

11. Schreiner Title Co. sent correspondence to Forney with the check, marked as Plaintiff's Exhibit 6, instructing it to release UCC financing statement # 85–073–0816 upon receipt of the check.

12. Forney did not release or subordinate its security interest in the farm equipment.

13. Thunderbird ceased doing business and conveyed its farm equipment to Gerrit Schilperoort of Wapato, Washington. The conveyance of farm equipment was subject to the outstanding liens of Forney/Haas and FmHA.

14. On or about December 1, 1990, Schilperoort sold, *inter alia*, the subject farm equipment to Haas, subject to a November 27, 1990 agreement between FmHA and Haas, marked as Plaintiff's Exhibit 5, recognizing that both FmHA and Haas claimed a first security interest in the farm equipment.

15. Proceeds from the sale of the farm equipment, to wit: $38,000.00, have been placed in escrow, pending a resolution of the priority dispute between FmHA and Haas.

16. Pursuant to the November 27, 1990 agreement, the party found to have priority shall receive the $38,000 principal amount plus earned interest from the time placed in escrow to the present date.

The court having considered the agreed facts and having heard and read the evidence presented, makes the following:

## FINDINGS OF FACT

1. Dwight and Theresa Holloway and Ed and Joan Roles, d/b/a Thunderbird Orchards, Inc. ("Thunderbird"), accumulated a substantial debt. One of Thunderbird's major creditors was Forney Fruit Co., Inc. ("Forney"), predecessor to Haas Fruit Co., Inc. ("Haas"). The debt from Thunderbird to Forney in 1986 was in the neighborhood of $500,000.

2. On February 28, 1985, Forney entered into an "Agreement Re Marketing of Fruit, Advances and Financing and Security" with Thunderbird. The agreement was recorded in Yakima County under number 2728173. Exhibit 2. The agreement was effective for five crop years, terminating on September 1, 1990. Also, on February 28, 1985, Thunderbird and Forney executed a security agreement giving Forney a security interest in crops and farm equipment and machinery located on certain real property farmed by Thunderbird. Exhibit 101. The security agreement does not contain an expiration date. Forney's security interest was perfected by a financing statement filed with the appropriate state office on

March 14, 1985 (UCC Financing Statement 85-073-0816). Exhibit 102.

Exhibit 2, ("Agreement Re Marketing of Fruit") also provides that Thunderbird would give Forney a real estate mortgage as additional security. On March 28, 1986, Thunderbird executed a real estate mortgage in favor of Forney Fruit covering Thunderbird's purchaser's interest in the orchard property. Exhibit 105. On that same date, Thunderbird also executed a security agreement giving Forney a security interest in crops and farm equipment and machinery located on said property. Exhibit 104. The security interest was perfected by a financing statement filed with the appropriate state office on June 2, 1986 (UCC Financing Statement 86-153-0174). Exhibit 106.

3. In 1986, Thunderbird sought a loan from the Farmers Home Administration ("FmHA") to refinance its total debt which was in excess of $1,000,000.00. This total included the substantial debt to Forney. Thunderbird sought Forney's cooperation so that it could obtain a loan from FmHA. In anticipation of the loan, FmHA requested that Thunderbird send a Request for Statement of Debts and Collateral to Forney. Thunderbird sent this request, marked as Plaintiff's Exhibit 3. The representation was made, with authority, by Ron Rockstrom that Forney was willing to assist upon portions of the loan being paid to Forney from the loan proceeds and if Forney could continue to pack and market the crops upon which Forney had a prior lien. Counsel and all witnesses agree that Forney would not subordinate its lien on the crops. Steven Douglas Forney, the president of Forney, testified that Forney wished to retain not only its interest in the crops but also in the equipment which would allow it to harvest the crops in case of foreclosure. Regarding Forney's position on this issue, the court restates its finding that in March of 1986 Thunderbird and Forney executed a security agreement giving Forney a security interest in crops and farm equipment and machinery located on certain real property farmed by Thunderbird. Exhibit 104. The security agreement does not contain an expiration date.

Forney's security interest was perfected by a financing statement filed with the appropriate state office on June 2, 1986 (UCC Financing Statement 86-153-0174). Exhibit 106. Forney's renewal of its security interest on both crops and farm equipment was accomplished during the time that negotiations were taking place between FmHA and Thunderbird regarding Forney's cooperation. See: Exhibits 3 and 13. It would not be logical for the court to find that Forney had in March 1986 agreed to the subordination or release of its lien on the farm equipment when both Forney and Thunderbird, who wanted the loan approved and wanted to please FmHA, entered into this renewal agreement. This renewal agreement clearly indicates that Forney wished to continue its lien on both the crops and farm equipment.

4. The court finds from the evidence that there was not a final agreement between FmHA and Forney about the release or subordination of Forney's liens on real and personal property until the execution of a "Subordination Agreement" during July 1986. Exhibit 1. In early 1986, in regard to Thunderbird's request for a loan, FmHA inquired whether Forney would be willing to "extend, renew, or reduce such debt" of Thunderbird. Forney responded that it would on the condition that it would handle and process Thunderbird's future crops. (See "Request for Statement of Debts and Collateral" executed by Forney on January 27, 1986). Exhibit 3. Forney's reply does not mention Forney's lien on the farm equipment or its removal or subordination.

5. Thereafter, FmHA and Thunderbird reached an understanding that FmHA would make a loan to Thunderbird. Pursuant to this understanding, a specified portion of the loan, although not an amount sufficient to satisfy Thunderbird's total debt to Forney, was to be disbursed to Forney. In addition, FmHA perfected a security interest in various assets of Thunderbird (crops, livestock, supplies, other farm products, and farm and other equipment) by way of security agreements dated April 4, 1986 and May 7, 1986. Exhibits 8

and 9. Financing statements were filed with the appropriate state office on April 7, 1986 and June 26, 1986 (UCC Financing Statements 86–097–0417 and 86–178–0054). Exhibits 10 and 11. Also, Thunderbird executed a real estate mortgage in favor of FmHA in consideration of a $378,000 loan. This real estate mortgage was to be dated and filed on July 31, 1986 "concurrently" with the subrogation agreement. *See:* Paragraph 2, Exhibit 1.

6. During early 1986, the Yakima FmHA office was extremely busy with disaster loans. Emergency personnel were assigned to the Yakima office during this time. This is probably the reason that the desire of some of the supervising personnel at the Yakima office to secure a release of security interest on farm machinery was apparently not conveyed to Bruce A. Whittle. Whittle executed the subordination agreement on behalf of FmHA as the "acting county supervisor." The fact that Mr. Whittle signed as "acting county supervisor" indicates the absence of Robert C. Van Pelt, Yakima County Supervisor, during the time that the negotiations between Forney, Thunderbird and FmHA became final via execution of the subordination agreement. Exhibit 1. At that point, subordination or release of Forney's lien on the farm equipment had not been agreed to by Forney.

7. In July 1986, FmHA, Thunderbird and Forney entered into a subordination agreement (recorded in Yakima County as number 2771067). Exhibit 1. Steven D. Forney read and signed the Subordination Agreement as president and secretary of Forney Fruit Co., Inc. Mr. Forney had authority to sign the agreement. Examination of this agreement indicates that Forney executed this agreement on July 28, 1986, apparently in his lawyer's (Mr. Beyer's) office. FmHA and Thunderbird executed the agreement on the day of closing (July 31, 1986). Paragraph 7 of the agreement provides:

> In consideration of the above agreements and to induce Lender (FmHA) to advance funds under all its agreements in connection therewith, the Subordinator (Forney), subject to the provisions hereof, does hereby subordinate the lien of its mortgages and its Agreement Re Marketing of Fruit identified in paragraph 1 above, to the Lender's mortgage, identified in paragraph 2 above, and all advances or charges made or accruing thereunder, including any extension or renewal thereof, provided that the principal amount of the obligation secured by Lender's mortgage shall not exceed $378,800.00. This agreement does not subordinate the security interest of Subordinator in and to any crops of Owner (Thunderbird), whether growing or separated, nor the proceeds thereof.

The Subordination Agreement, paragraph 11, recited that each of the parties had reviewed and approved the agreement and that each had been represented by independent legal counsel. It also provided for the payment of approximately $279,861.00 to Forney.

There is no provision in the Subordination Agreement whereby Forney agreed to subordinate any security interest it may have had under the UCC to any security interest which FmHA may have acquired. The Agreement Re Marketing did not, in and of itself, grant a security interest in any Thunderbird property, real or personal; it only provided for the execution of such documents as were essential to perfect such a security interest.

8. The agreement does not mention Forney's lien on the farm equipment and all of the testimony at trial was to the effect that Forney's lien on the farm equipment was not considered by anyone to have been subordinated or released by the execution of the subordination agreement. The court finds, based on this uniform and compelling testimony, that the subordination agreement (Exhibit 1) did not release or subordinate Forney's perfected lien on the subject farm equipment.

9. The closing of the loan by FmHA to Thunderbird was to be effected at Schreiner Title in Yakima, and was to include a payment to Forney out of the proceeds.

10. Under date of June 18, 1986 (apparently changed by the interlineation of 7–

18–86), FmHA sent to Schreiner Title Loan Closing Instructions which advised Schreiner that, in the closing:

a. Forney's real estate mortgage would have to be removed or subordinated to FmHA's real estate mortgage;

b. A UCC–1 financing statement in favor of FmHA would have to be filed with the Department of Licensing; and

c. "You need to exchange funds for the following releases of financing statement: Forney Fruit 85–073–0816" (plus others).

Exhibit 6.

11. Schreiner Title, the escrow agent, did not have either a release or subordination of financing statement 85–073–0816 at the time of closing. Accordingly, Schreiner Title gave Forney's office manager (Ron Rockstrom) a transmittal letter, dated August 1, 1986, which stated "upon receipt of the within payment, please release UCC Financing Statement 85–073–0816." A check in the amount of $288,216.31 was delivered along with the transmittal letter. Exhibit 4.

12. Forney had not agreed to release financing statement 85–073–0816.

13. Forney never released UCC Financing Statement 85–073–0816 relating to the farm equipment.

14. On November 27, 1990, FmHA and Haas entered into a written agreement which acknowledged their dispute concerning their relative priorities under liens relating to the farm equipment. The agreement further acknowledged that one of its purposes was to "preserve such priority of interest as FmHA may have to the farm equipment." The agreement was signed by the president of Haas and an attorney for FmHA, John Bennett Munson. Caribou Ranches, Inc. ("Caribou") was also a party to the agreement. The purpose of the agreement was to allow Caribou to sell the real property and the farm equipment to Haas, despite the priority dispute. The agreement provides that $38,000 of the purchase price will be deposited into an interest-bearing account and held there until the dispute is resolved. At the time of the closing of the sale, FmHA was to release any financing statement it had on file with the Yakima County Auditor's office or the office of the state Department of Licensing related to the farm equipment. The agreement provides that the priority dispute is to be resolved either by judicial action in U.S. District Court or by arbitration ruling. It is by virtue of this agreement that the matter is before the undersigned for determination.

Having made the above Findings of Fact, the court makes the following:

## CONCLUSIONS OF LAW

1. This action is properly brought by the United States of America under 28 U.S.C. § 1345 and this court has jurisdiction.

2. Based on the extrinsic evidence presented by the parties (i.e. the consensus testimony of officials of both the plaintiff and defendant and the documentary evidence other than the written subordination agreement), the only reasonable interpretation and construction of the integrated subordination agreement is that it did not subordinate Forney's interest in the farm equipment. *Berg v. Hudesman*, 115 Wash.2d 657, 667–68, 801 P.2d 222 (1990).

3. There was no separate agreement (no "meeting of the minds") between FmHA and Forney that Forney was to either release or subordinate its security interest in the subject farm equipment. *See generally Northwest Television Club, Inc., v. Gross Seattle, Inc.*, 96 Wash.2d 973, 634 P.2d 837 (1981).

4. Defendant Haas is not estopped from claiming interest in the farm equipment or substituted funds. As there was no promise or any other representation by Forney to FmHA that it would subordinate or release its interest in the farm equipment, there can be no justifiable reliance on the part of FmHA. *See generally Northern State Construction Co. v. Bernard Robbins, et al.*, 76 Wash.2d 357, 361, 457

P.2d 187 (1969).[2]

5. The security interest of defendant Haas in the farm equipment has priority over the security interest of FmHA in the farm equipment.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant Haas is entitled to the sale proceeds of $38,000 (plus accrued interest) deposited pursuant to the agreement of the parties. The Clerk of the Court shall enter judgment accordingly.

IT IS FURTHER ORDERED that plaintiff's complaint is DISMISSED with prejudice.

---

**2.** Promissory estoppel is a "sword" which can be used in a claim for damages. Equitable estoppel can only be used as a "shield"—a defense. *See Chemical Bank v. WPSS, et al.,* 102 Wash.2d

874, 691 P.2d 524 (1984). Even if equitable estoppel is correctly asserted by plaintiff, the theory fails because of the absence of any evidence of justifiable reliance.